STATE of Wisconsin, Plaintiff-Respondent,

v.

Keith A. GRAYSON, Defendant-Appellant-Petitioner.

Supreme Court

*No. 91–0756–CR. Oral argument September 3, 1992.—Decided December 15, 1992.*

(Also reported in 493 N.W.2d 23.)

For the defendant-appellant-petitioner there were briefs by *John Allan Pray, Kate Kruse Livermore* and *Legal Assistance Program, University of Wisconsin Law School,* Madison and oral argument by *Mr. Pray.*

For the plaintiff-respondent the cause was argued by *David J. Becker,* assistant attorney general, with

whom on the briefs was *James E. Doyle,* attorney general.

STEINMETZ, J.   The issue in this case is whether charging an individual who continuously failed to pay court-ordered child support for the years 1986, 1987, 1988, and 1989, with four counts of felony nonsupport under sec. 948.22(2), Stats., one for each year, is multiplicitous and therefore impermissible.

We hold that sec. 948.22(2), Stats., permits a prosecutor to charge one count of felony nonsupport for each 120-day term a person fails to pay child support, even if that person failed to pay over one continuous period.[1]

The defendant, Keith A. Grayson, was convicted on his plea of no contest of four counts of nonsupport contrary to sec. 940.27(2), Stats. 1987–88.[2] Each of the four counts was for failure to pay court ordered child support for more than 120 days during a separate calendar year (1986, 1987, 1988 and 1989). During that four-year period, the defendant's failure to pay support was continuous. In other words, he paid no support at all for four years. The court of appeals affirmed all four convictions. *State v. Grayson,* 165 Wis. 2d 557, 560, 478 N.W.2d 390 (Ct. App. 1991).

---

[1] For example, if a person fails to pay child support for 360 consecutive days, a prosecutor could charge him with three counts of felony nonsupport.

The prosecutor's choice to charge one count per year for four years in the instant case, rather than one count every 120 days for four years, is permissible. It is within a prosecutor's discretion to charge felony nonsupport counts extending over a period greater than 120 days. *See State v. Lomagro,* 113 Wis. 2d 582, 597–98 & n. 6, 335 N.W.2d 583 (1983). *See also State v. George,* 69 Wis. 2d 92, 100, 230 N.W.2d 253 (1975).

[2] Section 940.27(2), Stats. 1987–88 has been renumbered sec. 948.22(2), Stats. 1989–90.

The defendant has petitioned this court and argues that the four charges were multiplicitous. Consequently, his convictions should be overturned.

■

Multiplicity is defined as the charging of a single criminal offense in more than one count. *Harrell v. State,* 88 Wis. 2d 546, 555, 277 N.W.2d 462, 464–65 (1979). Multiplicitous charges are impermissible because they violate the double jeopardy provisions of the Wisconsin and United States Constitutions. *See, e.g., State v. Rabe,* 96 Wis. 2d 48, 61, 291 N.W.2d 809, 815 (1980).

■

In Wisconsin, courts employ a two-prong test when analyzing a multiplicity problem. Under the first prong, courts inquire whether the charged offenses are identical in law and fact. If they are, the charges are multiplicitous. *Id.* at 63. However, if the charges are different in law or fact, they may still be multiplicitous under the second prong. *State v. Tappa,* 127 Wis. 2d 155, 164, 378 N.W.2d 883, 887 (1985). Under that test, the charges are multiplicitous if the legislature intended them to be brought as a single count.[3]

In *State v. Sauceda,* 168 Wis. 2d 486, 485 N.W.2d 1 (1992), this court stated that the first element of the multiplicity test, identity of law and fact, is the same whether we are addressing multiple criminal charges brought under different statutory sections, as in

---

[3] Only the first factor of the multiplicity test implicates the double jeopardy clauses of the state and federal constitutions. *See Rabe,* 96 Wis. 2d at 69. Once it is determined that the offenses are different in law or fact, double jeopardy concerns disappear.

The second factor of the test is solely a question of statutory interpretation. Criminal charges that are multiplicitous under this factor are impermissible because they contravene the will of the legislature.

*Sauceda,* or multiple charges brought under one statutory section, as in the instant case. *Id.* at 493 n.8. We also stated in *Sauceda* that if the first factor of the multiplicity test is satisfied, "then this court shall presume that the legislature intended to permit cumulative punishments . . .." *Id.* at 495. Since the first factor of the multiplicity test is the same under the fact situation in *Sauceda* and the fact situation here, it follows that the presumption of multiple punishments is also the same. We so hold.

In the instant case, the defendant concedes that each of the four charges is different in fact because they are based on different time periods. Consequently, our inquiry is limited to determining whether the legislature's intent contravenes the presumption that multiple felony convictions are permissible under sec. 948.22(2), Stats.

Statutory construction involves a question of law and is reviewed de novo. *See, e.g., State v. Nixa,* 121 Wis. 2d 160, 163, 360 N.W.2d 52, 54 (Ct. App. 1984).

When determining legislative intent for multiplicity purposes, this court examines four factors:

>   (1)   the language of the statute;
>   (2)   the legislative history and context of the statute;
>   (3)   the nature of the proscribed conduct; and
>   (4)   the appropriateness of multiple punishment for the conduct.

*Tappa,* 127 Wis. 2d at 165.

There is no express indication of legislative intent as to the allowable unit of prosecution in the language or legislative history of sec. 948.22, Stats. The state concedes that the statute is ambiguous in this respect.

The defendant argues that this lack of express intent and presence of ambiguity means that he should prevail. He bases this conclusion on the rule of lenity: in the absence of express legislative intent to permit multiple punishment, a penal statute should be interpreted in the defendant's favor. *See, e.g., State v. Bohacheff,* 114 Wis. 2d 402, 417, 338 N.W.2d 466, 473 (1983).

This argument fails for several reasons. First, it flies in the face of the presumption that sec. 948.22(2), Stats., permits multiple counts.

Second, this court has previously rejected it. We did this by adopting the four-factor test. If an express legislative intent or the absence of ambiguity were the benchmark against which the issue of the allowable unit of prosecution had to be decided, consideration of the matter would be limited to the first two factors. The last two factors would not then be relevant.

This court has also rejected the defendant's argument expressly. In *Tappa,* 127 Wis. 2d at 170–71, a case similar to this one involving the issue of the allowable unit of prosecution under a single statute, we stated the following:

> We hold that a common sense reading of the statute supports the conclusion that transfer and concealment are separate offenses. The Defendant argues that if there is any ambiguity in the statute, then the statute should be interpreted in his favor. In Wisconsin, 'penal statutes are generally construed strictly to safeguard a defendant's rights.' *Austin,* 86 Wis. 2d at 223. However, 'the rule of strict construction is not violated by taking the common-sense view of the statute as a whole and giving effect to the object of the legislature, if a reasonable construction of the words permits it. *Austin,* 86 Wis. 2d at 223 (quoting

*Zurnott v. Timken-Detroit Axle Co.,* 244 Wis. 506, 600, 13 N.W.2d 53 (1944)).

Similarly, in *Manson v. State,* 101 Wis. 2d 413, 428, 304 N.W.2d 729 (1981), this court decided whether Wisconsin's armed robbery statute, sec. 943.32, Stats. 1977, defined one or two separate offenses by resorting to "a common sense reading of the statute which [was] reasonable and fair to offenders and society . . .." *Manson,* 101 Wis. 2d at 428. Like the statute at issue here, the robbery statute did "not expressly state whether the legislature intended . . . one or two offenses." *Id.*

Consequently, because the legislature failed to expressly state the allowable unit of prosecution under sec. 948.22, Stats., this court must determine its intent as to that issue according to "a common sense reading of the statute" that will give effect to "the object of the legislature" and produce a result that is "reasonable and fair to offenders and society." If such a reading fails to rebut the presumption in favor of multiple counts, the state will prevail. To determine legislative intent, we will examine the four factors mentioned above.

A. Factor No. 1: Statutory Language

Section 948.22(2), felony nonsupport, reads as follows:

> Any person who intentionally fails for 120 or more consecutive days to provide . . . child support which the person knows or reasonably should know the person is legally obligated to provide is guilty of a Class E felony.

Section 948.22(3), misdemeanor nonsupport, reads as follows:

> Any person who intentionally fails for less than 120 consecutive days to provide . . . child support

which the person knows or reasonably should know the person is legally obligated to provide is guilty of a Class A misdemeanor.

The applicable penalty language, provides as follows:

For a Class E felony, a fine not to exceed $10,000 or imprisonment not to exceed 2 years, or both.

Section 939.50(3)(e), Stats.

For a Class A misdemeanor, a fine not to exceed $10,000 or imprisonment not to exceed 9 months, or both.

Section 939.51(3)(a), Stats.

Because of its express reference to the 120-day time period, the felony nonsupport statute can reasonably be interpreted as allowing a separate felony charge for each 120-day period a person fails to provide child support.

The applicable penalty language supports this interpretation. It is well established in Wisconsin that when an offense is an ongoing one over a period of time, the existence of gradations in punishment is indicative of a legislative intent that the offense constitute one continuing crime. *State v. Schumacher,* 144 Wis. 2d 388, 411–12, 424 N.W.2d 672 (1988); *John v. State,* 96 Wis. 2d 183, 191, 291 N.W.2d 502 (1980), aff'g 89 Wis. 2d 214, 219, 278 N.W.2d 235 (Ct. App. 1979). For example, in *Schumacher,* 144 Wis. 2d at 411–12, considering a welfare fraud issue, we stated the following:

Section 49.12(6), Stats., incorporates the penalty structure of sec. 49.12(1). Subsection (1) makes clear that the penalties for welfare fraud become increasingly more severe depending on the amount of money the defrauder has received . . ..

163

> This structure of penalties is a progressive one. The more money one fails to report under subsec. (6), the stiffer the penalty becomes. Use of a progressive penalty structure must, within reason, contemplate a continuing crime.

Just as the presence of gradations in the penalty structure indicates that an ongoing offense should be treated as a single crime, the lack of gradations is viewed as indicating that an ongoing offense may be charged as multiple separate offenses.

B.   Factor No. 2: The Legislative History and Context of the Statute

The history of the nonsupport statute is not enlightening. The present statute is critically different from its predecessors. Consequently, even if the former statutes did not permit multiple charges, there is no reason to conclude the same for the present statute.

Prior nonsupport statutes provided as follows:

> Any person who deserts or wilfully neglects or refuses to provide for the support and maintenance of his or her spouse or marital or nonmarital child under 18 years in destitute or necessitous circumstances shall be fined not more than $500 or imprisoned not more than 2 years or both.

Section 52.05(1), Stats., 1983–84.

> Any parent who intentionally neglects or refuses to provide for the necessary and adequate support of his or her marital or nonmarital child under 18 years ... shall be guilty of a misdemeanor and may be fined not more than $100 or imprisoned not more than 3 months in the county jail or both.

Section 52.055(1), Stats., 1983–84.

The present statute breaks from its predecessors in two critical ways. First, the present statute introduced a

time period, 120 days, to which the unit of prosecution can be tied. This time period defines the felony offense. Consequently, for the first time, the statute can reasonably be construed as permitting multiple felony counts for each 120-day period of nonsupport.

Second, the present statute also recognizes for the first time gradations in the severity of nonsupport violations. The present statute expressly provides that nonsupport for a period of less than 120 days is a class A misdemeanor; for a period of 120 days or more it is a Class E felony. Consequently, it becomes reasonable to conclude that the legislature did not intend the gradations to end at 120 days. Interpreting sec. 948.22(2), Stats., as permitting a count for each 120 day period of nonsupport is consistent with the legislature's desire, evinced by the felony/misdemeanor distinction, to punish more serious violations of the statute more severely.

C. Factor No. 3: The Nature of the Proscribed Conduct

*State v. Eisch*, 96 Wis. 2d 25, 31, 291 N.W.2d 800 (1980), states that multiple charges under a single statute are permissible if the facts underlying the charges "are either separated in time or are of a significantly different nature in fact." Here the facts are both separated in time and different in nature. They are separate in time because, each 120-day period of failure to provide support occurred in a separate and distinct calendar year. They are different in nature because a new *mens rea* was formed for each 120-day period of nonpayment. The crime of nonsupport is a crime of omission, but it is also a crime of intent. The 120-day period that must elapse before the defendant is guilty of an additional count of felony nonsupport provides more than sufficient time to reflect and form a new *mens rea.*

165

## D. Factor No. 4: The Appropriateness of Multiple Punishment

Multiple punishments based on each 120-day period of nonsupport are not only appropriate, but essential, if the statute is to provide deterrence and proportionality in its operation.

*State v. Hamilton,* 146 Wis. 2d 426, 432 N.W.2d 108 (Ct. App. 1988), illustrates the need for deterrence. In *Hamilton,* the court of appeals determined that a defendant who possesses at one time and place a number of items with altered or removed serial numbers (contrary to sec. 943.37(3), Stats.) may be prosecuted for a separate charge based on each altered article of personal property. *Id.* at 429. It reasoned that deterrence would not exist unless possession of each item constituted a separate offense. *Id.* at 441. More specifically, the court stated the following at p. 441:

> If only a single charge and punishment is available . . . no matter how many items are possessed, thieves and receivers are encouraged, not deterred. The more they possess, the greater their potential profit, with no concomitant increase in risk. We think such a result contrary to public policy in and of itself and is certainly contrary to the intent of the legislature.

The same is true here. If a parent failing to provide child support for 120 days or more is liable to prosecution for only one offense no matter how long the period of nonsupport continues, the continuation of the failure to provide support is encouraged, not deterred. Multiple charges are not only appropriate, they are essential if the nonsupport statute is to deter long-term failures to provide support.

Multiple charges are also needed to assure proportionality between the harm caused by and the punish-

ment received for nonsupport. In this case, at the end of 120 days, the defendant had failed to provide approximately $1,700 in support. At the end of seven years, he had failed to provide approximately $36,400 in support. The longer the period of nonpayment, the greater the harm that is inflicted. A child is left with increasing amounts of the monies needed for his or her support unpaid. Our holding that sec. 948.22(2) permits multiple counts, even if that person fails to pay over one continuous period, provides for punishment proportional to this increased harm. Otherwise, a person who fails to provide support for one year and a person who fails to provide support for 18 years would be subject to the same penalty.

■ Examination of the aforementioned factors indicates that the presumption in favor of multiple counts is not rebutted. A common sense reading of sec. 948.22, Stats., establishes a legislative intent to permit multiple counts of felony nonsupport when the defendant fails to pay child support for one continuous period.

*By the Court.*—The decision of the court of appeals is affirmed.

WILLIAM A. BABLITCH, J. *(dissenting)*. This case raises the issue of multiplicity—the impermissible charging of one offense in several counts. The precise question presented revolves around whether the reference in the statute to "120 or more consecutive days" allows charging a separate count for each 120-day period of continual nonsupport. If, on the other hand, the reference to the 120 or more days was intended by the legislature to indicate that failure to pay support for any period longer than 120 days is the continuation of one offense,

167

then charging multiple counts under sec. 948.22(2), Stats., is prohibited as multiplicitous.

The majority opinion interprets the statute so as to allow a prosecutor, after 120 days of nonsupport, to wait for however long he or she wishes before filing charges. Furthermore, the holding allows the prosecutor to charge however many counts of felony nonsupport that he or she wishes as long as the charges are at least in 120-day increments. The majority's interpretation of the statute allowing this result is unpersuasive; their holding strains all reasonable statutory construction and nullifies the social purposes behind the statute. Its holding provides neither support for victims nor deterrence for offenders. Accordingly, I dissent.

To determine whether a statute creates one offense or several offenses, we look to legislative intent. The majority correctly notes that the following factors must be examined in order to determine legislative intent: (1) the language of the statute; (2) the legislative history and context of the statute; (3) the nature of the proscribed conduct; and (4) the appropriateness of multiple punishment for the conduct. However, the majority's analysis of these four factors is unpersuasive. Each of the four factors supports the defendant's interpretation of the statute and evidences a legislative intent to allow only one charge of felony nonsupport in a single prosecution.

## 1. THE LANGUAGE OF THE STATUTE

Section 948.22(2), Stats., provides that "[a]ny person who intentionally fails for 120 or more consecutive days to provide . . . child support . . . is guilty of a Class E felony." If the statute did not contain the words "or more" after the reference to the 120 days, the majority's conclusion that the statute allows a new charge to be brought in a single prosecution for every 120-day period

of continual nonsupport would be plausible. However, the legislature did not use the words "120 consecutive days" to define the crime. Instead, it used the words "120 *or more* consecutive days." Unless the legislature's words are to be construed as mere surplusage, the statute must be read as allowing a separate charge for each 120 days of nonsupport only if a charge is brought at each 120-day mark. If no charge is brought at the 120-day mark, the offense continues and is chargeable only as one two year felony.

In support of its interpretation, the majority also determines, albeit implicitly, that the statute contains no gradations in penalties and thus contemplates the charging of multiple separate offenses.[1] I disagree. The statute does contain gradations in penalties. The failure to provide support for less than 120 days is a misdemeanor and the failure to provide support for 120 or more days is a felony. This court has stated that when a crime provides a progressive structure of penalties, the charging period "was obviously contemplated to be the continuing period through which [the defendant's con-

---

[1] The only way to read the majority's analysis under this section of its opinion is that the majority concludes that no progressive penalty structure exists in sec. 948.22(2), Stats. Specifically, the majority never states the applicable penalty language of this statute, nor does it explain why the penalty structure is not progressive. Rather, the majority states, "[t]he applicable penalty language supports this [the majority's] interpretation. . . . Just as the presence of gradations in the penalty structure indicates that an ongoing offense should be treated as a single crime, the lack of gradations is viewed as indicating that an ongoing offense may be charged as multiple separate offenses." Majority Op. at 164. However, this conclusion seems to contradict the majority's statement that "the present statute also recognizes for the first time gradations in the severity of nonsupport violations." Majority Op. at 165. These gradations in severity are also gradations in penalties.

duct] ran . . .." *State v. Schumacher,* 144 Wis. 2d 388, 412, 424 N.W.2d 672, (1988). In *Schumacher,* the court analyzed the proper charging unit under the welfare fraud statute, sec. 49.12, Stats. 1983–84, which provides three grades of increasingly higher penalties based on the amount of money that a defendant fraudulently receives. In finding that it was not duplicitous to combine several welfare overpayments in one charge, the court reasoned that the legislature's use of a progressive penalty structure in the welfare fraud statute contemplated a continuing offense. Otherwise, the upper brackets of the penalty structure would be mere surplusage because a onetime overgrant would never equal the amount of money needed to trigger the greater penalties. *Id.* at 412. As noted above, like the crime of welfare fraud, the crime of failure to provide child support has a progressive penalty structure. The defendant persuasively argues:

> As in *Schumacher,* this progressive penalty structure indicates that the legislature assumed that failure to pay child support was a continuing offense. Otherwise, there would be no possibility for a defendant to commit the felony of failing to provide support for 120 days or more. Every day that a child support payment is overdue would be a new misdemeanor.

In other words, each day of nonsupport would be a separate offense that constituted "less than 120 consecutive days," and thus there would never be a felony offense. Such a conclusion is, obviously, absurd.

The absence of express authority in the statute for separate offenses further buttresses the defendant's interpretation of the statute. Statutes often set forth the appropriate unit of charging and give express authority for separate prosecutions for continuing illegal conduct by stating that "every day shall constitute a separate

170

offense." As Judge Cane noted in his dissent in this case, "crimes relating to worker's compensation, unemployment compensation and wage rates on state work provide that each such act or omission 'constitute[s] a separate offense.'" *State v. Grayson,* 165 Wis. 2d 557, 568, 478 N.W.2d 390 (Ct. App. 1991) (Cane, J., dissenting). *See also* sec. 108.24(2), Stats. ("every day of refusal or failure constitutes a separate offense"); sec. 102.17(3) ("[e]ach day such person shall so refuse or neglect shall constitute a separate offense"); sec. 103.49(4), Stats. ("[e]ach day any violation of this subsection continues shall be deemed a separate offense"). If the legislature had wanted to provide a new two year penalty for every 120 days that a child support obligation continually went unpaid, it could have done so expressly.

## 2. THE LEGISLATIVE HISTORY AND CONTEXT OF THE STATUTE

In analyzing the legislative history and context of the statute, the majority's argument in support of multiple charges is that the language "120 or more consecutive days" was a clear break from prior codifications. The majority asserts that the presence of such a break in statutory language means that even if the former statutes did not permit multiple charges, there is no reason to conclude that the present statute should be similarly interpreted. The critical issue in interpreting legislative history, however, is not the mere presence of such a break in statutory language but rather the connection between the break and the disputed portion of the statute.

In this case, the legislative history offers persuasive evidence that the insertion of the phrase "120 or more consecutive days" was in response to the lower court's decision in *State v. Cissell,* 127 Wis. 2d 205, 378 N.W.2d

691 (1985), declaring the former nonsupport statutes unconstitutional based on the court's conclusion that the elements of the two statutes were identical but provided different penalties. Contemporaneous with the appeal from *Cissell,* the legislature was recreating the abandonment and support statutes in separate sections. Thus, as this court acknowledged in its reversal of the court of appeals' affirmation of the lower court decision, the recent legislative changes would "avoid some of the claimed defects in the [old] statute . . .;" namely, that "[t]he new statute . . . differentiates between sentence exposures on the basis of the length of time that a person fails to provide support." *Cissel,* 127 Wis. 2d at 215. Furthermore, according to the legislative drafting request, the new legislation "removes the bar to criminal non-support actions caused by a Milwaukee circuit court finding that the present law is unconstitutional." This statement evidences that the change in the statute was made to provide a precise demarcation between the felony and the misdemeanor offense. No evidence exists, nor is any put forth in the majority analysis, to suggest that the change was made to provide for multiple felony counts. The drafting and creation of the new statute was motivated by a desire to distinguish between support and abandonment statutes; not to allow multiple counts of non-support in a single prosecution.

### 3. THE NATURE OF THE PROSCRIBED CONDUCT

The majority contends that in considering the factor of the nature of the proscribed conduct, case law indicates that multiple charges under a single statute are permissible if the facts underlying the charges are either separated in time or are of a significantly different nature. The majority contends that in this case the

nature. The majority contends that in this case the offenses are separated in time in that each 120-day period of failure to provide support was alleged to have occurred in a separate calendar year. However, as Judge Cane noted in his dissent, this argument is unpersuasive because "these allegedly distinct offenses were arbitrarily imposed by the state in its charging." *Grayson,* 165 Wis. 2d at 571 (Cane, J., dissenting). The defendant did not embark on a new course of action during each period, but rather simply continued as he had before. The only reason why the distinct time intervals exist are because the State arbitrarily imposed them.

This court has stated that "[a] defendant ought not be charged, tried or convicted for offenses that are substantially alike when they are a part of the same general transaction or episode." *State v. Eisch,* 96 Wis. 2d 25, 34, 291 N.W.2d 800 (1980). Furthermore, a central question to be asked in evaluating the nature of the conduct is whether the " 'defendant can be said to have realized that he has come to a fork in the road, and nevertheless decides to invade a different interest . . ..' " *Eisch,* 96 Wis. 2d at 36 (citation omitted). Applying these principles, the nature of the proscribed conduct also weighs in favor of the defendant's interpretation of the statute.

As the defendant suggests, many state courts, in contexts unrelated to double jeopardy concerns, have referred to nonsupport as a continuing offense. *See State v. Greenberg,* 16 N.J. 568, 109 A.2d 669, 674 (1954); *Day v. State,* 481 P.2d 807, 808 (Okl. Ct. App. 1971); *State v. Tahash,* 280 Minn. 507, 160 N.W.2d 139, 141 (1968). This court has itself suggested that nonsupport is a continuing offense. *See Watke v. State,* 166 Wis. 41, 47 (1917). Furthermore, in *Taylor v. State,* 710 P.2d 1019 (Alaska App. 1985), the Alaska court, in discussing a similar issue as involved in this case, found that nonsup-

173

improper to charge the defendant with a separate violation for each month of missed payments. *Id.* at 1024. These references to nonsupport as a continuing offense support the defendant's interpretation of the statute.

The defendant also contends that the reason why case law views nonsupport as a continuing offense is because nonsupport is a crime of omission and there are no distinct acts that can be compared to determine whether the defendant had sufficient time to reflect and form a new *mens rea.* His argument is persuasive. Any distinction between multiple counts is based on arbitrary time divisions, such as this case where the state did not charge at 120-day intervals, but rather in year intervals. Thus, there is no clear point at which a defendant can be said to have come to "a fork in the road" and nevertheless decided to invade a different interest.

### 4. THE APPROPRIATENESS OF MULTIPLE PUNISHMENT

The majority asserts that "[m]ultiple punishments based on each 120-day period of nonsupport are not only appropriate, but essential, if the statute is to provide deterrence and proportionality in its operation." Majority Op. at 166. Specifically the majority notes that the charging of multiple counts in a single prosecution is essential because, "[i]f a parent failing to provide child support for 120 days or more is liable to prosecution for only one offense no matter how long the period of nonsupport continues, the continuation of the failure to provide support is encouraged, not deterred." Majority Op. at 166. This argument is flawed for two reasons.

First, Grayson's interpretation of the statute equally allows for egregious offenders to be more severely punished. If a single felony conviction fails to motivate a parent to pay support, the State can bring another felony

174

charge after giving the parent 120 days to mend his or her ways. Under this interpretation of the statute, prosecutors could charge each offense at the time it occurs, rather than waiting several years before charging numerous counts.

Second, a goal of this statute, and obvious public policy, is to enforce support obligations by creating pressure on those charged with support to pay up. The interpretation of the statute propounded by the defendant and this dissent furthers the goal of the statute in that it encourages prosecutors to bring charges early so that if the defendant continues to fail to pay support after the initial charge, he or she can be charged again. Bringing a charge early at the 120-day mark and putting a defendant on notice (if not in jail) after his or her first failure to pay support, is far more likely to result in payment from the defendant than if the charges are not brought until many years later. If a charge is brought early, at the very least a chance exists that the laggard defendant will learn his or her lessons and pay support. However, if prosecutor's are allowed to do what was done here and wait several years before prosecuting, defendants have little incentive during that time to pay their support.

Long continual periods of incarceration do not facilitate the purpose of the statute of encouraging parents to pay their support obligations. Instead, long incarcerations are likely to disable defendants from paying support obligations by taking them away from their jobs. Under the defendant's interpretation of the statute, a nonpaying parent is incarcerated for a short period of time after his or her first failure to provide support, thus providing him or her time to reflect on the crime but not disabling him or her for a long period of time from obtaining a means to provide support.

175

What we have in this case is the failure of the State to charge Mr. Grayson with nonsupport until seven years of nonpayment had accrued. If Mr. Grayson would have been prosecuted at the beginning of his nonpayment, at the very least he would have been alerted to the risk of nonpayment. Instead, he accumulated substantial delinquencies in payment. The chances of his paying any future support, much less any back support, while he sits in jail is just about nil. As it now stands, his conviction will not serve any of the purposes under the statute other than punishment: his ex-spouse in all likelihood will not receive payments while Mr. Grayson is serving his eight year sentence, and his children have already suffered the consequences of nonpayment for the seven years which the State had the opportunity to charge him.

In conclusion, the majority's analysis offers little evidence suggesting that the legislature intended to allow multiple counts of felony nonsupport in a single prosecution. A plain reading of the statute, with its use of the term "or more," indicates that the failure to pay for longer than 120 days is a continuation of one offense. This interpretation of the statute, which requires a prosecutor to bring a charge at the 120-day mark in order to charge multiple violations, furthers the goals of the statute and is fair to the victim, society and the defendant. If the legislature wishes to impose a separate penalty in a single prosecution for each continuous failure to pay support for 120 days, the legislature should expressly state this objective.

For these reasons, I would reverse the decision of the court of appeals and allow only one conviction of the defendant. Accordingly, I dissent.

I am authorized to state that Chief Justice NATHAN S. HEFFERNAN and JUSTICE SHIRLEY S. ABRAHAMSON join this dissenting opinion.