STATE of Wisconsin, Plaintiff-Respondent,

v.

David H. HUBBARD, Defendant-Appellant.†

Court of Appeals

*No. 96–0865–CR. Submitted on briefs October 11, 1996.—Decided November 27, 1996.*

(Also reported in 558 N.W.2d 126.)

†Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Margaret A. Maroney*, assistant state public defender.

For the plaintiff-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general and *James M. Freimuth*, assistant attorney general.

Dykman, P.J., Roggensack and Deininger, JJ.

DEININGER, J. Hubbard appeals from a judgment convicting him of six counts of felony issuance of worthless checks, contrary to § 943.24(2), STATS.[1] Hubbard claims that six of the charges are multiplicitous. He argues that the legislature intended that any number of worthless checks for less than $1,000 each issued within a fifteen-day period, regardless of their aggregate value so long as it exceeds $1,000, constitutes but one felony. We conclude, however, that the allowable unit of prosecution under § 943.24(2) is a group of checks having a total value of more than $1,000, and thus these charges are not multiplicitous. Accordingly, we affirm the convictions.

## BACKGROUND

From November 18 through November 23, 1994, Hubbard issued fifty-seven worthless checks, each for less than $1,000, but amounting in the aggregate to more than $6,000. The information charged six felony counts under § 943.24(2), STATS., on these checks. Each count identifies a different group of checks totalling more than $1,000 written during the six days. Each individual check is included in only one count. Hubbard moved the trial court to "join" the six counts into one because they were multiplicitous. The trial court

---

[1] Section 943.24(2), STATS., provides as follows:

(2) Whoever issues any single check or other order for the payment of more than $1,000 or whoever within a 15-day period issues more than one check or other order amounting in the aggregate to more than $1,000 which, at the time of issuance, the person intends shall not be paid is guilty of a Class E felony.

denied the motion. Hubbard subsequently pled no contest to all six counts.[2]

## ANALYSIS

### *Plea-Waiver*

 The State argues that Hubbard has waived the double jeopardy issue by pleading no contest to the six charges. Ordinarily, a plea of guilty or no contest waives all nonjurisdictional defenses and defenses occurring prior to the plea, including claims of constitutional error. *State v. Princess Cinema of Milwaukee, Inc.*, 96 Wis. 2d 646, 651, 292 N.W.2d 807, 810 (1980). The Wisconsin Supreme Court, however, has held that double jeopardy is an exception to the guilty-plea-waiver rule. *State v. Morris*, 108 Wis. 2d 282, 284 n.2, 322 N.W.2d 264, 265 (1982).[3] *United States v. Broce*, 488 U.S. 563 (1989), cited by the State, is distinguishable. In *Broce*, the defendants claimed double jeopardy as part of a collateral attack on allegedly multiplicitous charges, and a determination of the double jeopardy

[2] Hubbard was charged and convicted of other offenses as well, including some charges consolidated from another county. He appeals only from the six counts noted.

[3] The State cites *Nelson v. State*, 53 Wis. 2d 769, 774, 193 N.W.2d 704, 707 (1972), in support of its argument that a double jeopardy defense is waived by a no contest plea and also by a plea agreement. However, *Nelson* was decided prior to *State v. Morris*, 108 Wis. 2d 282, 284 n.2, 322 N.W.2d 264, 265 (1982), and several other Wisconsin cases holding that double jeopardy is not waived by a plea. *See State v. Riley*, 166 Wis. 2d 299, 302 n.3, 479 N.W.2d 234, 235 (Ct. App. 1991); *State v. Hartnek*, 146 Wis. 2d 188, 192 n.3, 430 N.W.2d 361, 362 (Ct. App. 1988); *State v. Olson*, 127 Wis. 2d 412, 422, 380 N.W.2d 375, 380 (Ct. App. 1985) (discussing *Menna v. New York*, 423 U.S. 61 (1975)).

issue would have required the court to go beyond the record. *Id.* at 574-76. Here, Hubbard's claim is on direct appeal from convictions where the potential double jeopardy violation is facially ascertainable on the record without supplementation. We conclude that Hubbard's no contest pleas establish his "factual guilt" on the six counts but do not bar his claim that, judged on their face, the charges violate double jeopardy. *See Menna v. New York*, 423 U.S. 61, 62 n.2 (1975).

We similarly reject the State's waiver argument based upon Hubbard's plea agreement. The State argues that a plea agreement constitutes a separate ground for concluding that Hubbard waived his double jeopardy argument. We do not agree. Absent an express waiver of his double jeopardy claim as part of a plea agreement, we fail to see how the agreement can constitute waiver of the double jeopardy claim when the plea itself does not.[4]

Here, the plea agreement contains no express waiver of the double jeopardy claim.[5] In exchange for

___

[4] The State cites several cases from other jurisdictions in support of its argument that a plea agreement waives double jeopardy even if the plea itself does not. *See Dermota v. United States*, 895 F.2d 1324, 1325-26 (11th Cir.), *cert. denied*, 498 U.S. 837 (1990); *Novaton v. State*, 634 So. 2d 607, 609 (Fla. 1994). We do not find these cases persuasive. The State also cites *People v. Allen*, 658 N.E.2d 1012, 1014 (N.Y. 1995), with whose holding we have no quarrel: a defendant may expressly waive a double jeopardy defense as part of a plea bargain.

[5] In fact, at the time of his pleas Hubbard told the court that he had certain issues he wished to "bring up in appeal," and at sentencing he gave the court a written statement which included the following: "I feel very strongly that counts #1 - #7,

Hubbard's pleas to certain charges, others were consolidated or read-in. Additionally, the District Attorney agreed to recommend a cumulative maximum of ten years imprisonment on all counts. The State would have us conclude that the plea agreement accomplished a waiver because "the basis for the double-jeopardy complaint was known to [Hubbard]" when he accepted the agreement. However we conclude that awareness of a double jeopardy defense at the time of the plea agreement is not a substitute for express waiver and does not distinguish a plea from a plea agreement for the purposes of waiving the defense.

■

In addition, the State also knew of the potential for appeal of the double jeopardy claim despite the no contest plea. *See Menna*, 423 U.S. at 62 n.2; *Morris*, 108 Wis. 2d at 284 n.2, 322 N.W.2d at 265. If a waiver of the right to appeal the trial court's denial of Hubbard's double jeopardy claim was an important consideration for the State, it could have been expressly addressed in the plea agreement. Absent an express waiver, we conclude Hubbard is entitled to have the merits of his double jeopardy claim reviewed on this appeal.

*Multiplicity*

■

Multiplicity is the charging of a single criminal offense in more than one count. *Harrell v. State*, 88 Wis. 2d 546, 555, 277 N.W.2d 462, 464-65 (Ct. App. 1979). Multiplicitous charges violate the double jeopardy provisions of the Wisconsin and United States

---

in the Portage County information, are in direct violation of Wis. Statutes 943.24(2)."

Constitutions.[6] *See State v. Rabe*, 96 Wis. 2d 48, 61, 291 N.W.2d 809, 815 (1980). When, as here, multiple charges are brought under the same statute, the proper question is " 'what is the allowable unit of prosecution?' " *Blenski v. State*, 73 Wis. 2d 685, 694, 245 N.W.2d 906, 911 (1976)s.

Hubbard contends that the legislature intended under § 943.24(2), STATS., to create but one felony offense for issuing any number of under-$1,000 checks within a fifteen-day period, regardless of their aggregate value so long as it exceeds $1,000. Thus, Hubbard argues that the allowable unit of prosecution is "a 15-day period," and the six felonies charged here violate constitutional protections against multiple punishment for the same offense. We disagree.

The parties agree that the analysis in *State v. Grayson*, 172 Wis. 2d 156, 493 N.W.2d 23 (1992), governs this appeal. In *Grayson*, the supreme court held that the legislature intended the allowable unit of prosecution under § 948.22(2), STATS.,[7] for felony nonsupport to be a 120-day time period. *Id.* at 163, 493 N.W.2d at 27. Since § 943.24(2), STATS., also makes express reference to a time period, Hubbard urges us to

---

[6] U.S. CONST. amend. V; WIS. CONST. art. I, sec. 8, para. (1).

[7] The predecessor to § 948.22(2), STATS., under which Grayson was charged, provided as follows:

(2) Any person who intentionally fails for 120 or more consecutive days to provide . . . child support which the person knows or reasonably should know the person is legally obligated to provide is guilty of a Class E felony.

After *Grayson* was decided, the legislature added the following sentence to this subsection: "A prosecutor may charge a person with multiple counts for a violation under this subsection if each count covers a period of at least 120 consecutive days and there is no overlap between periods." 1993 Wis. Act 274.

declare that to be the allowable unit of prosecution. We do not read *Grayson* to require, however, that whenever a criminal statute mentions a period of time in defining a crime, that time period necessarily defines the "unit of prosecution" for purposes of multiplicity analysis.

■

Rather, to discern the legislature's intended unit of prosecution when one is not expressly indicated, we must examine four factors:[8] (1) the language of the statute; (2) the legislative history and context of the statute; (3) the nature of the proscribed conduct; and (4) the appropriateness of multiple punishment for the conduct. *Id.* at 160, 493 N.W.2d at 25-26; *State v. Tappa*, 127 Wis. 2d 155, 165, 378 N.W.2d 883, 887 (1985).

The language of § 943.24(2), STATS., focuses on more than the passage of time. It requires action for

---

[8] While there is a first prong to multiplicity analysis, whether the charges are identical in law and fact, *State v. Rabe*, 96 Wis. 2d 48, 63, 291 N.W.2d 809, 816 (1980), there is no dispute that these charges encompass different facts, i.e., different groupings of issued checks with no single check included in more than one group. Thus, there is a presumption that " 'cumulative punishments' " are permissible, unless, under the second prong of the test, the presumption is overcome by a contravening legislative intent. *See State v. Grayson*, 172 Wis. 2d 156, 160, 493 N.W.2d. 23, 25 (1992).

Some cases indicate that compliance with the first prong of the multiplicity analysis is all that is required to meet a double jeopardy challenge, because the second prong concerns only statutory interpretation. *See id.* at 159 n.3, 493 N.W.2d at 25; *see also State v. Tappa*, 127 Wis. 2d 155, 164, 378 N.W.2d 883, 887 (1985). Because this issue was not briefed by the parties, we decline to address it. *See State v. Hartnek*, 146 Wis. 2d 188, 192 n.3, 430 N.W.2d 361, 362 (Ct. App. 1988).

criminal liability to attach, the issuance of multiple worthless checks: "whoever within a 15-day period issues more than one check . . . amounting in the aggregate to more than $1,000 . . . ." Hubbard's time-based interpretation of the statute would punish a "slow" issuer of serial worthless checks more harshly than a more prodigious issuer like Hubbard. That is, Hubbard would allow six felonies to be charged against someone who wrote the same number and amounts of checks as he did so long as each group of checks aggregating to more than $1,000 was issued during separate and discrete fifteen-day periods.

To conclude that the legislature intended to reward speed in issuing worthless checks by establishing a fifteen-day period as the unit of felony prosecution is at best a strained reading of § 943.24(2), STATS. The language of the statute does not support Hubbard's interpretation. *See State v. Mattes*, 175 Wis. 2d 572, 578, 499 N.W.2d 711, 713 (Ct. App. 1993) ("[a] statute should not be construed so as to work absurd or unreasonable results"). The fifteen-day period is more plausibly read to be a limitation on prosecutorial discretion, ensuring that checks aggregated for felony prosecution can reasonably be said to comprise a single course of criminal conduct. In the absence of this limitation, it would be possible for a prosecutor to charge a felony when someone had issued a worthless check for $501 and then another one for the same amount many months later.

Before the enactment of Laws of 1977, ch. 173, §§ 67 and 69, issuing a worthless check, regardless of amount, could only be prosecuted as a misdemeanor. In chapter 173, the legislature created a value-based dividing line between misdemeanor and felony prosecutions for issuing worthless checks, similar to the

division in other property crimes. Prefatory Note to 1977 Senate Bill 14. In an explanatory note to § 943.24(2), STATS., contained in an earlier version of the bill, the change is described as providing "greater sentencing flexibility in punishing persons convicted of issuing worthless checks by making the crime either a misdemeanor or a felony depending on the amount wrongfully obtained."[9]

This history renders the legislature's intent clear: whenever, by a single worthless check or by multiple checks issued within a brief time span, more than $1,000 is obtained, the conduct may be prosecuted as a felony. Establishing the aggregate value of multiple checks, rather than the time period in which they are issued, as the unit of prosecution defining a felony is consistent with the history of § 943.24(2), STATS., and its context among the other crimes involving misappropriation of property divided by value into misdemeanors and felonies.

Finally, the nature of the proscribed conduct and the appropriateness of multiple punishment also support the State's interpretation of § 943.24(2), STATS. Hubbard would have us hold that once he issued a number of checks, each for less than $1,000 but which aggregated to over that amount, he was immunized from further felony prosecutions for the balance of the fifteen-day period commencing with the date of his first check, regardless of the total value of checks he might issue in that period. An individual who continues to issue worthless checks after passing $1,000 in aggregate value, however, inflicts new and additional financial harm, often on new and different victims. It is not inappropriate, therefore, to subject an issuer to

---

[9] *See* 1975 Senate Bill 14.

separate felony punishments for each series of checks which aggregate to more than $1,000.[10]

For these reasons, we conclude that the legislature intended the allowable unit of felony prosecution under § 943.24(2), STATS., to be a group of checks having a total value of more than $1,000. Accordingly, we affirm the convictions.

*By the Court.*—Judgment affirmed.

[10] Hubbard points out that the issuer of a single worthless check for more than $1,000 does not face additional punishments for each additional $1,000 in value of the check. Thus, as he notes in his reply brief, one who issues four worthless checks of $550 each faces two felonies under the State's interpretation of § 943.24(2), STATS., while another who writes a single check for $20,000 faces only one. This point does not diminish the propriety of punishing each act (or series of acts) which inflicts more than $1,000 of damage as a separate felony. The serial check issuer engages in fraudulent intent and action repeatedly while the single issuer does so only once.