STATE of Wisconsin, Plaintiff-Respondent,

v.

Jason J. TRAWITZKI, Defendant-Appellant.†

Court of Appeals

*No. 99–2234–CR. Submitted on briefs June 23, 2000.—Decided August 31, 2000.*

## 2000 WI App 205

(Also reported in 618 N.W.2d 884.)

†Petition to review granted.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Donald T. Lang,* assistant state public defender, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Thomas J. Balistreri,* assistant attorney general, and *James E. Doyle,* attorney general.

Before Dykman, P.J., Vergeront and Deininger, JJ.

¶ 1. DEININGER, J.   Jason Trawitzki appeals a judgment convicting him of one count of burglary, ten counts of theft and five counts of concealing stolen property. He also appeals an order denying his motion for postconviction relief. Trawitzki contends that the theft and concealment charges brought against him were multiplicitous, and thus in violation of the Double Jeopardy Clause. He also contends that his counsel was ineffective for failing to impeach certain of the State's witnesses. We reject Trawitzki's arguments and affirm the appealed judgment and order.

## BACKGROUND

¶ 2. Trawitzki, along with several friends, accompanied Kristy Lehman, a runaway, to her home in Watertown. Before leaving the Lehman home, members of the group took at least ten firearms belonging to Kristy's father and loaded them into the trunk of

Trawitzki's friend's car. The group then drove to the home of one of the participants and placed all the guns in the basement. The next morning, several of the guns were removed from the basement and hidden near a bridge. Trawitzki acknowledged being present during the activities at the Lehman house, but denied carrying any of the guns out of the residence. He also denied seeing or assisting in the hiding of the guns.

¶ 3. The State charged Trawitzki with burglary while armed, the thefts of the ten firearms and the concealment of five of them, all as a party to the crimes, which were also alleged to have been committed in association with a criminal gang. *See* WIS. STAT. § 939.625 (1997–98).[1] During Trawitzki's jury trial, three of the co-perpetrators testified for the State. It was established that each of them was then in jail or prison because of their involvement with the burglary and thefts at the Lehman residence. The jury found Trawitzki guilty of one count of burglary, ten counts of theft of a firearm, and five counts of concealing a stolen firearm, all as a party to the crimes and in association with a criminal gang. The trial court denied his post-conviction motion alleging ineffective assistance of counsel. Trawitzki appeals his convictions and the order denying relief from them.

## ANALYSIS

¶ 4. "Multiplicity" is the term used to describe the charging of a single criminal offense in more than one count. *See Harrell v. State*, 88 Wis. 2d 546, 555, 277 N.W.2d 462 (Ct. App. 1979). Multiplicitous charges vio-

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

late the double jeopardy provisions of the Wisconsin and United States Constitutions.[2] *See State v. Rabe*, 96 Wis. 2d 48, 61, 291 N.W.2d 809 (1980). Trawitzki asserts that the multiple theft and concealment charges for which he was prosecuted, convicted and punished, violate the constitutional prohibition against double jeopardy. This is a question of law, which we decide de novo. *See State v. Sauceda*, 168 Wis. 2d 486, 492, 485 N.W.2d 1 (1992).

¶ 5. As we have recently explained, the prohibition against "multiple punishments" serves to protect the legislature's authority to prescribe the limits of punishment for criminal offenses from encroachment by the executive branch in bringing charges, or by the judiciary in imposing sentences:

> The United States Supreme Court has identified three protections afforded by the double jeopardy provision: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *United States v. Wilson*, 420 U.S. 332, 343 (1975) (citations omitted). In cases implicating the protection against multiple punishments, the question is whether the punishments are for the "same offense." The answer depends on the intent of the legislature in drafting the criminal statutes under which the defendant is convicted. "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366 (1983).

---

[2] *See* U.S. CONST. amend. V; WIS. CONST. art. I, § 8, cl. (1).

*State v. Church*, 223 Wis. 2d 641, 649, 589 N.W.2d 638 (Ct. App. 1998), *review granted*, 225 Wis. 2d 487, 594 N.W.2d 382 (Wis. Apr. 27, 1999) (No. 97–3140–CR), *review dismissed*, 2000 WI 90, 236 Wis. 2d 755, 613 N.W.2d 848 (Wis. July 11, 2000).

¶ 6. Thus, although Trawitzki invokes the protection of the federal and state constitutions, the issue before us must be resolved as a question of statutory interpretation. If the legislature, in enacting WIS. STAT. § 943.20(3)(d)5, intended that a defendant may be separately and cumulatively punished for each firearm he or she steals or conceals, then Trawitzki's convictions are not multiplicitous. If, on the other hand, the legislature intended the imposition of only one punishment for a single episode of firearms theft or concealment, regardless of the number of weapons that are taken or hidden, then Trawitzki's multiple convictions are constitutionally barred. *See Sauceda*, 168 Wis. 2d at 492.

¶ 7. In short, the question before us is " 'what is the allowable unit of prosecution' " intended by the legislature for the crime of theft of a firearm? *See Blenski v. State*, 73 Wis. 2d 685, 694, 245 N.W.2d 906 (1976) (citation omitted). To answer it, we employ the two-prong test the Wisconsin Supreme Court has adopted to evaluate whether charges are multiplicitous. First, a court must determine whether the offenses are "identical in law and in fact." If identical in both law and fact, the charges are multiplicitous. Second, if the offenses are not the same in law or fact, the court must determine whether the legislature nevertheless intended the multiple offenses to be brought as one count. *See State v. Anderson*, 219 Wis. 2d 739, 747, 580 N.W.2d 329 (1998).

¶ 8. There is no dispute that the ten theft counts are identical in law, as are the five concealment counts. All of the charges arise under the same statutory provisions, WIS. STAT. § 943.20(1)(a) and (3)(d)5, which provide in relevant part:

> **(1)** ACTS. Whoever does any of the following may be penalized as provided in sub. (3):
>
> (a) Intentionally takes and carries away, uses, transfers, conceals, or retains possession of movable property of another without the other's consent and with intent to deprive the owner permanently of possession of such property.
>
> . . . .
>
> **(3)** PENALTIES. Whoever violates sub. (1):
>
> . . . .
>
> (d) If the value of the property does not exceed $2,500 and any of the following circumstances exist, is guilty of a Class D felony:
>
> . . . .
>
> 5. The property is a firearm.

¶ 9. Trawitzki argues that the multiple counts are also identical in fact because the theft charges arise out of a single act of taking, and the concealing counts likewise involve but one act of concealment. We disagree. To obtain the separate convictions for each firearm, the State had to prove that each item stolen or concealed was indeed a "firearm." *See* WIS JI—CRIMINAL 1441B (1999). And, for each count, the State had to prove that the elements of theft were present with respect to each individual firearm (asportation or concealment, lack of the owner's consent, the defendant's knowledge thereof, and intent to permanently deprive the owner of possession). *See* WIS JI—CRIMINAL 1441 (1999).

¶ 10.  Multiple offenses are not the same in fact if the facts on which they are based are "either separated in time or of a significantly different nature." *State v. Anderson*, 219 Wis. 2d 739, 749, 580 N.W.2d 329 (1998). We are satisfied that each of the allegedly multiplicitous charges are based on sufficiently different facts—the individual identity and characteristics of each firearm—to render each separate charge different in fact from the others. Furthermore, the firearms taken and concealed were unique and divisible, thus differentiating their thefts from, for example, the theft of several gallons of gasoline or a handful of jelly beans. As the State notes, Trawitzki and his friends could easily have elected to take any number less than all ten of the guns, just as they elected to hide only five of them. In short, the taking of each firearm represented a separate volitional act on the part of the burglars. *See id.*

¶ 11.  Although we have concluded that the multiple charges at issue were not identical in fact, our inquiry is not ended. We must now presume the legislature to have intended to allow multiple punishments for the taking of more than one firearm in a single episode of theft, but we must look further to ascertain whether there are any indications of legislative intent to the contrary. *See Anderson*, 219 Wis. 2d at 751. For this part of the analysis, we are to consider four factors: "(1) the language of the statute; (2) the legislative history and context of the statute; (3) the nature of the proscribed conduct; and (4) the appropriateness of multiple punishment for the conduct." *State v. Hubbard*, 206 Wis. 2d 651, 659, 558 N.W.2d 126 (Ct. App. 1996) (citing *State v. Grayson*, 172 Wis. 2d 156, 160, 493

N.W.2d 23 (1992); and *State v. Tappa*, 127 Wis. 2d 155, 165, 378 N.W.2d 883 (1985)).

¶ 12.   The plain language of the statute supports the presumption that the legislature intended to allow multiple punishments in circumstances such as those presently under review. It chose to use the singular term "a firearm," rather than specifying that a theft of "firearms," or even "one or more firearms," constitutes a Class D felony. Trawitzki, however, points to WIS. STAT. § 990.001(1), which provides that "unless construction in accordance with a rule would produce a result inconsistent with the manifest intent of the legislature . . . [t]he singular includes the plural, and the plural includes the singular."

¶ 13.   We agree that this statutory construction rule permits a prosecutor to aggregate the thefts of several firearms into a single felony charge under WIS. STAT. § 943.20(3)(d)5, but we reject the notion that it provides a basis for concluding that the legislature has required a prosecutor to do so. In order to rebut the presumption in favor of multiple charging under which our present inquiry proceeds, a "clear indication to the contrary" is required. *See Anderson*, 219 Wis. 2d at 751 (citing *Missouri v. Hunter*, 459 U.S. 359, 367 (1983)). Nothing in the language of the statute indicates that the legislature intended that a prosecutor must combine the thefts of several firearms during a single episode into a single felony charge under § 943.20(3)(d)5, and WIS. STAT. § 990.001(1) falls far short of providing a "clear indication to the contrary."

¶ 14.   The history of WIS. STAT. § 943.20 offers little insight as to what the legislature intended regarding the allowable unit of prosecution when a number of firearms are stolen or concealed in a single

804

episode of theft. The felony penalty for theft of a firearm was added to the theft statute by Laws of 1977, ch. 255, a single-subject act which created § 943.20(3)(d)5 and made no other changes to the theft statute or any other criminal statutes relating to firearms. If anything, the act's "relating clause," supports the presumption that the legislature intended to permit the prosecution of a separate felony for each firearm taken in a single episode of theft: "AN ACT . . . relating to making theft of a firearm a felony." But even if the history of the statute lends little support to the State's position, as Trawitzki argues, it also provides no indication whatsoever that the legislature's intent was to prohibit multiple charges when several firearms are stolen in a single episode of theft.

¶ 15. The final two factors we are to review, the nature of the proscribed conduct and the appropriateness of multiple punishments for that conduct, are closely related. Trawitzki points to what he terms the absurdity of allowing multiple punishments on the present facts by noting that, under another subparagraph of the statute, the theft of property that "is a domestic animal" is also made a felony. Hence, in an example Trawitzki posits, the theft of a truckload of 500 chickens might subject the perpetrator to 5000 years in prison (500 times a 10-year-term of imprisonment for each bird). He argues that the felony penalty provisions at issue focus "not on the amount, number, or value of the items taken, but on the nature of the property involved or the circumstances surrounding the taking." We agree with this proposition, but not with the conclusion Trawitzki would have us draw from it.

¶ 16. We agree that the legislature in enacting the felony penalty for theft of a firearm was concerned with the nature of the stolen item, but we deem it

neither absurd nor inappropriate that a separate or additional penalty may be sought for each firearm taken in an episode of theft. As the State points out, it is reasonable to assume that, while other aspects of the theft statute focus on the harm or loss to the victim, the legislature sought by enacting WIS. STAT. § 943.20(3)(d)5 to address a separate societal concern, the proliferation of guns among criminals. And, since the theft of each individual firearm potentially places another weapon in the hands of a criminal for use in another crime, it is not inappropriate to separately penalize the taking or concealment of each one. (We leave for another day the consideration of the appropriateness of exposing a thief convicted of stealing 500 chickens to 5000 years of imprisonment.)

¶ 17.  In summary, none of the *Grayson* factors produce any indication, let alone a "clear indication," *see Anderson*, 219 Wis. 2d at 751, that the legislature intended only a single prosecution for the taking or concealment of several guns in a single episode of theft. We thus hold that the presumption in favor of the allowance of multiple prosecutions is not overcome, and Trawitzki's convictions for ten counts of theft and five counts of concealing stolen property do not violate the Double Jeopardy Clauses of the federal and state constitutions.

¶ 18.  The remaining issue is whether Trawitzki was denied effective assistance of counsel because of his attorney's failure to impeach certain state witnesses. Although the jury was informed that each witness was incarcerated for his or her involvement in the Lehman burglary and thefts, Trawitzki argues that his attorney was ineffective because he failed to elicit the *number* of times each witness had been convicted of

a crime. We conclude, however, that counsel was not ineffective because the failure to elicit the number of convictions for each witness did not prejudice Trawitzki.

¶ 19. To prevail on a claim of ineffective assistance of counsel, a defendant must establish that his trial counsel's performance was deficient and that this performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Whether trial counsel's actions constitute ineffective assistance presents a mixed question of law and fact. *See State v. Pitsch*, 124 Wis. 2d 628, 633–34, 369 N.W.2d 711 (1985). We will not reverse the trial court's factual findings regarding counsel's actions at trial unless those findings are clearly erroneous. *See id.* at 634. Whether trial counsel's performance was deficient and whether that behavior prejudiced the defense, however, are questions of law which we review de novo. *See id.*

¶ 20. In analyzing an ineffective assistance claim, this court may choose to address either the "deficient performance" component or the "prejudice" component first. *See Strickland*, 466 U.S. at 697. If we determine that the defendant has made an inadequate showing on either component, we need not address the other. *See id.* We turn first to the issue of prejudice. To prove prejudice, Trawitzki must show that trial counsel's errors had an actual, adverse effect on the defense. *See id.* at 693. He must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Specifically, Trawitzki must convince us that the failure to elicit the number of convictions of the witnesses deprived him of a "fair trial, a trial whose result is reliable." *Id.* at 687.

807

¶ 21.   Trawitzki contends that the trial ultimately rested on how the jury perceived the credibility of the State's witnesses balanced against his own credibility. Therefore, Trawitzki argues that failing to impeach the State's witnesses by eliciting the number of convictions was prejudicial. Each of the witnesses admitted to being a participant in the burglary and thefts of the firearms. The only thing the jury was not told was the number of convictions each witness had garnered.[3] Defense counsel testified that he did not elicit the number of convictions from each witness for tactical reasons. He felt that bringing out this information would only harm his client because the jury would associate the criminal activities of his co-conspirators with Trawitzki's own guilt—"[I]t seemed to me that would be just inviting people to point out the fact they did these—other people had been convicted of these crimes, we should convict Mr. Trawitzki as well."

¶ 22.   Because the jury knew that the three witnesses were incarcerated for their involvement in the Lehman burglary and thefts, jurors already had a basis to question the credibility of their testimony. Evidence that a witness has been convicted of a crime is admissible for the purpose of attacking the witness's credibility by an adverse inference regarding the witness's character for truthfulness. *See State v. Smith*, 203 Wis. 2d

---

[3] Evidence adduced at the postconviction hearing indicates that Kristy Lehman had three convictions, all apparently relating to the Lehman burglary and thefts; that another witness, Jason Glascock, had eight, five of which apparently related to the Lehman burglary and three for offenses committed four days later; and that the third witness, Christopher Schoch, had fourteen convictions, twelve of which apparently arose out of the Lehman incident, and two that were unrelated to it.

288, 294, 553 N.W.2d 824 (Ct. App. 1996). Even though the number of convictions each witness had may have added incrementally to the adverse inference, we deem it unlikely that the additional information would have materially influenced the jurors' credibility assessments. That is, we are not persuaded that there is a reasonable probability that the results of Trawitzki's trial would have been different if his counsel had established that the three co-perpetrators who testified against Trawitzki had been convicted of multiple crimes.

## CONCLUSION

¶ 23.   For the reasons discussed above, we affirm the appealed judgment and order.

*By the Court.*—Judgment and order affirmed.