SARTIN (JAMES), Plaintiff in error, v. STATE, Defendant in error.

SARTIN (JOHN L.), Plaintiff in error, v. STATE, Defendant in error.

PIERCE, Plaintiff in error, v. STATE, Defendant in error.

*Nos. State 73–75. Argued September 8, 1969.—Decided September 30, 1969.*

(Also reported in 170 N. W. 2d 727.)

For the plaintiffs in error there was a brief by *Olden-burg & Lent* and *Charles P. Dykman,* all of Madison, and oral argument by *Mr. Dykman.*

For the defendant in error the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the brief were *Robert W. Warren,* attorney general, and *William A. Platz,* assistant attorney general.

WILKIE, J. Two issues are raised by this review. They are:

1. Was there sufficient evidence introduced to prove intent on the part of the defendants to permanently deprive the owner of the car of his property?

2. Was the jury correct in determining that the value of the car on the date of the taking was $125, making the crime a felony under sec. 943.20 (3) (b), Stats.?

Before considering these issues on the merits as raised by our review, it is necessary to consider a preliminary additional issue raised by the state, to wit:

Are the defendants now precluded from raising the question of the sufficiency of the evidence to prove intent when they did not raise it at the trial level either in their motion for a new trial or their motion for judgment notwithstanding the verdict?

The defense counsel moved "for judgment notwithstanding the verdict, and for a new trial." Asked to state his reasons for asking for a new trial, counsel replied that he did so "because of errors in the trial" and "because the verdict is contrary to . . . the evidence."

Thus, in this case our review is not limited by the well-established rule of this court, that, in the absence of compelling circumstances, on appeal this court will not consider claims of insufficiency of evidence when such claims were not raised before the trial court on a motion for a new trial or to set aside the verdict because of the alleged insufficiency of the evidence.[1]

Here there was a motion for a new trial and, although such motion was not specifically bottomed on a claim of insufficiency of the evidence to prove intent to permanently deprive, counsel did urge his motion upon the trial

[1] See State v. Van Beek (1966), 31 Wis. 2d 51, 141 N. W. 2d 873; State v. Thompson (1966), 31 Wis. 2d 365, 142 N. W. 2d 779; Okimosh v. State (1967), 34 Wis. 2d 120, 148 N. W. 2d 652; Finger v. State (1968), 40 Wis. 2d 103, 161 N. W. 2d 272; Gray v. State (1968), 40 Wis. 2d 379, 161 N. W. 2d 892.

court "because the verdict is contrary to both the law and the evidence."

We conclude that, although the motion was not made in as artful a form as it could have been, the motion can be construed so as to raise the issue of the sufficiency of the evidence to prove intent and we proceed to review that question here.

As is discussed in *State v. Escobedo*,[2] decided today, a motion for judgment notwithstanding the verdict is not enough by itself to protect the defendant so that the defendant can, as a matter of right, raise questions in this court as to the sufficiency of the evidence. There must be a motion for a new trial (as here), or a motion to set aside the verdict because of the alleged insufficiency of the evidence.

### *Evidence of Intent.*

The defendants were charged and convicted under the theft statute, sec. 943.20 (1) (a), which provides:

"943.20 **Theft.** (1) Whoever does any of the following may be penalized as provided in sub. (3):

"(a) Intentionally takes and carries away, uses, transfers, conceals, or retains possession of movable property of another without his consent and with intent to deprive the owner permanently of possession of such property."

Thus, it clearly appears that intent to permanently deprive the owner of his property is one of the primary elements of this statute, unlike sec. 943.23, Stats., the so-called "joyriding" statute.[3]

The burden of proof is on the state to prove the defendant guilty beyond a reasonable doubt and as this court has said many times, the test on review by this court is:

---

[2] Ante, p. 85, 170 N. W. 2d 709.

[3] *See Bass v. State* (1965), 29 Wis. 2d 201, 138 N. W. 2d 154. Sec. 943.23, Stats., provides: "Whoever intentionally takes and drives any vehicle without the consent of the owner may be fined not more than $1,000 or imprisoned not more than 5 years or both."

" '. . . whether the evidence adduced, believed and rationally considered by the jury, was sufficient to prove the defendant's guilt beyond a reasonable doubt.' . . ." [4]

The difficulty with a case like the instant one, as was recognized recently by this court in *Strait v. State,*[5] is that often there is no direct evidence going to the issue of intent. In the *Strait Case,* this court said:

" 'Intent is a state of mind existing at the time a person commits an offense. If intent required definite and substantive proof, it would be almost impossible to convict, absent facts disclosing a culmination of the intent. The mind of an alleged offender, however, may be read from his acts, conduct, and inferences fairly deducible from all the circumstances.' 13 Am. Jur. 2d, *Burglary,* p. 352, sec. 52.

" 'The type of reasonable certitude required in criminal cases is moral certainty relating to the affairs of human conduct and grows out of informed experience with the common ways (mores) of man. It is based upon the certain constancy and uniformity in the free conduct of humans under given conditions or motives. Based upon long experience with the actions and motives of human nature, certain inferences of conduct may be drawn from various circumstances to a moral certainty. This is not to say that exceptions and possibilities may not exist but such possibilities in themselves do not prevent a person from forming a reasonable conviction beyond a reasonable doubt or to a moral certainty of the truth of a fact. This degree of certainty required to sustain a criminal conviction may be attained upon circumstantial evidence as well as upon direct evidence.' *State v. Johnson* (1960), 11 Wis. 2d 130, 136, 104 N. W. 2d 379." [6]

Thus it becomes necessary for this court to look at the record to determine whether the jury, acting reasonably, could be convinced beyond a reasonable doubt by

---

[4] *See Finger v. State, supra,* footnote 1, at page 110, and cases cited therein. *See also Lock v. State* (1966), 31 Wis. 2d 110, 142 N. W. 2d 183.

[5] (1969), 41 Wis. 2d 552, 164 N. W. 2d 505.

[6] *Id.* at pages 559, 560.

the evidence that the defendants had the intent to permanently deprive Harlan of his automobile.[7]

The evidence shows that the defendants took Harlan's car without his consent after it had been parked at his place of employment without the keys in the ignition; that after driving the car for a short while, during which time the car was damaged to the extent as to make it undrivable, the defendants abandoned it on the shoulder of Highway 51. Thereafter, when the police attempted to apprehend the defendants, they refused to stop when so ordered and it was necessary for a shot to be fired into the air to stop them.

The state argues that these activities indicate that the intent of the defendants was to steal the car within the meaning of sec. 943.20 (1) (a), Stats. Two cases are cited by the state for the proposition that evidence, indicating that a defendant abandoned a damaged car which he had taken without consent, is sufficient to support a conviction of theft, including the intent element thereof.

In *Schroeder v. State*,[8] the defendants took two automobiles which were later found damaged and abandoned 80 to 100 miles from the place of taking. This court sustained a conviction for larceny under sec. 343.17, Stats. 1935, which did not provide that the intent to permanently deprive must be present.

Then in *Dascenzo v. State*,[9] this court upheld the conviction of the defendant for theft when the evidence showed that the car taken was found damaged and abandoned on the side of a highway about 300 miles from the place of taking.

The defendants attempt to distinguish the instant case from the two prior cases by arguing that here they had

[7] *See Lock v. State, supra,* footnote 4, at pages 114, 115.

[8] (1936), 222 Wis. 251, 267 N. W. 899.

[9] (1965), 26 Wis. 2d 225, 132 N. W. 2d 231.

possession of the car for only a short period of time and had driven it only a short distance before they abandoned it. They argue that their activities are more consistent with a finding of a violation of sec. 943.23, Stats., the "joyriding" statute rather than the theft statute.

The distance traveled between the time of taking and the time of abandonment is not determinative of the issue of intent. The defendants here abandoned the car after only a short distance because the car was damaged then and not after driving many miles. They abandoned it early because it was damaged then and they could do nothing but leave it.

Dean Gordon Baldwin, in a 1960 Marquette Law Review article discussing the *Schroeder Case* and the then newly enacted Criminal Code with its theft statute, said:

"The language of *Schroeder* differs from the Code's description of the mental element [*i.e.*, intent to permanently deprive] but there is no reason to believe that the Criminal Code intended a change in the law. What the Code as well as the decided cases appear to be doing is proscribing acts accompanied by the intentional creation of an unreasonable risk of permanent loss to the owner. Accordingly, the jury may find the necessary element where the actor takes property for temporary use and abandons it under circumstances amounting to a 'reckless exposure to loss.' The criminal law must act upon probabilities and risks rather than upon hindsight." [10] (Citations and original emphasis omitted.)

We have no hesitancy in concluding from our review of the record that there was sufficient evidence presented at the defendants' trial from which the jury could reasonably infer that the defendants possessed the requisite intent to permanently deprive Harlan of his automobile.

[10] Baldwin, *Criminal Misappropriation in Wisconsin*—Part I, 44 Marq. L. Rev. 253, 267.

### *Value.*

Sec. 943.20 (3), Stats., prescribes the applicable penalties for theft:

"(3) PENALTIES. Penalties for violation of this section shall be as follows:

"(a) If the value of the property does not exceed $100, a fine of not more than $200 or imprisonment for not more than 6 months or both.

"(b) If the value of the property exceeds $100 but not $2,500, a fine of not more than $5,000 or imprisonment for not more than 5 years or both."

While it is clear that the value of the property stolen is not an element of the crime of theft, nevertheless value is of the utmost importance in determining the applicable penalty upon conviction. The dividing line as to whether the crime is a felony or a misdemeanor is $100.

Sec. 943.20 (2) (c), Stats., contains the definition of value and provides, *inter alia:*

"'Value' means the market value at the time of the theft or the cost to the victim of replacing the property within a reasonable time after the theft, whichever is less . . . ."

Thus this section defines two distinct "values": (1) The market value and (2) the cost of replacement—the replacement value. The controlling value for the purposes of imposing penalties is the lesser of these two.

In the instant situation the trial court instructed the jury on the meaning of "value" by using the exact statutory definition quoted above. The court then went on to define the words "market value" as:

"The term 'fair market value' is defined as the amount of money that property will exchange for on the market at private sale between a prudent seller, ready and willing to sell, but not compelled to sell, and a prudent buyer, ready and able to buy, but not compelled to buy."

This definition is substantially the same as has been used in several previous Wisconsin cases.[11]

Defendants' argument is that these definitions are ambiguous; that there are two distinct automobile markets, retail and wholesale; that since sec. 943.20, Stats., is a penal statute and does not indicate which of the two markets is to be used in determining value, the statute should be construed strictly in favor of the defendants so as to define market in terms of the wholesale market. Accordingly, defendants argue further that since there was testimony to the effect that the wholesale value of the Harlan car was between $50 and $75, this is the value that should govern, and that each of them should have received the misdemeanor sentence of six months instead of the felony sentence.

We do not think the statute is ambiguous in defining value. The statutory scheme clearly contemplates a determination of the cost of replacement to the victim. It is conceivable that this could be the wholesale market price. In this case there was uncontroverted testimony that the victim, Harlan, could not replace his vehicle for personal use in the wholesale market. Therefore, the wholesale replacement cost or price is immaterial and his replacement cost would be the retail price.

Under the statutory scheme that calls for a determination of the market value, this would not necessarily be either the retail or wholesale price. Under the well-known definition as given by the trial court it would be competitive market price established by determining the amount of money that the item stolen would be exchanged for on the market at a private sale between a prudent

---

[11] See State ex rel. New Lisbon State Bank v. New Lisbon (1952), 260 Wis. 607, 611, 51 N. W. 2d 509; State ex rel. Hennessey v. Milwaukee (1942), 241 Wis. 548, 550, 6 N. W. 2d 718; Estate of Nieman (1939), 230 Wis. 23, 39, 283 N. W. 452. See also Milwaukee Trust Co. v. Milwaukee (1912), 151 Wis. 2d 224, 138 N. W. 707; Maxon v. Gates (1908), 136 Wis. 270, 116 N. W. 758.

seller, ready and willing to sell, but not compelled to sell, and a prudent buyer, ready and able to buy, but not compelled to buy. This value is not necessarily either the wholesale or retail value. Rather those prices would set the outer limits within which the market value can be found.

The state places great emphasis on the New York case of *People v. Irrizari.*[12] In that case the defendant had stolen a number of women's dresses from department stores. All the dresses had a wholesale value of under $100 and many of them had retail value in excess of $100. In New York, the value of the property stolen is determined solely on the basis of "market value" and the dividing line between petit larceny and grand larceny is $100. The defendant was found guilty of grand larceny and on appeal made a similar argument as the one the defendants are now raising. The New York Court of Appeals' holding on appeal is illustrated by the following headnote to that case:

"For purposes of determining whether grand larceny has been committed, 'market value' of stolen property is its value in market in which thief would have to purchase property, and not value in market in which owner would have to replace property; and where theft is from department store neither replacement cost nor wholesale value is appropriate measure and listed retail price is ordinarily determinative, unless it is shown that such list price was much higher than price being paid for similar merchandise in vicinity." [13]

The state's reliance on this case appears to be misplaced, since Wisconsin prescribes two methods to determine value—market value and replacement cost. Thus, the *Irrizari Case* would perhaps have a different result in Wisconsin.

We conclude that the trial court's instructions directed at the determination of market value, were correct.

[12] (1959), 5 N. Y. 2d 142, 156 N. E. 2d 69.
[13] *People v. Irrizari, supra,* footnote 12, at 156 N. E. 2d 69.

The only question remaining is whether the jury's determination that the value of the car was $125 is supported by the evidence.

Three experts expressed opinions as to the market value of the car at the time of the theft. Two experts called by the state valued the car at $250 and $150. An expert witness called by the defense stated that he would sell the car, as it was at the time of the theft, for $125.

Thus, the jury's determination that the value of the car was $125 is clearly supported by the evidence. In the light of this evidence it would be impossible for this court to grant the defendants' request to find, as a matter of law, that the value of the car was less than $100.

*By the Court.*—Judgment affirmed.