STATE of Wisconsin, Plaintiff-Respondent,

v.

Jason J. TRAWITZKI, Defendant-Appellant-Petitioner.

Supreme Court

*No. 99–2234–CR. Oral argument May 2, 2001.—Decided June 29, 2001.*

2001 WI 77

(Also reported in 628 N.W.2d 801.)

527

For the defendant-appellant-petitioner there were briefs and oral argument by *Donald T. Lang*, assistant state public defender.

For the plaintiff-respondent the cause was argued by *Sandra L. Nowack*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

¶ 1. N. PATRICK CROOKS, J. In this case, we review a court of appeals decision that affirmed a circuit court's denial of a post-conviction motion brought by Petitioner Jason J. Trawitzki (Trawitzki). After Trawitzki was found guilty of ten theft charges for his role in the taking of ten firearms from a home and five charges of concealing stolen property for his role in the subsequent hiding of five of the firearms, he claimed that the charges were multiplicitous, and therefore in violation of the constitutional prohibition against double jeopardy. Trawitzki also claimed that his trial counsel was ineffective for failing to impeach three of the State's witnesses with the specific number of prior convictions for each one.

¶ 2. The circuit court denied his motion. The court of appeals affirmed. *State v. Trawitzki*, 2000 WI App 205, 238 Wis. 2d 795, 618 N.W.2d 884. We accepted Trawitzki's petition for review.

¶ 3. We hold that the charges are not multiplicitous because the charges are not identical in fact, and because Trawitzki has not overcome the presumption that the legislature intended to allow multiple prosecu-

tions. We further hold that Trawitzki's trial counsel was not ineffective for failing to impeach three of the State's witnesses with the number of their prior criminal convictions, because Trawitzki has not established that this failure was prejudicial to him. Confidence in the outcome of the trial has not been undermined by such failure. Accordingly, we affirm the court of appeals decision that in turn affirmed the circuit court's judgment and its denial of Trawitzki's post-conviction motion.

I

¶ 4. On August 29, 1997, members of a criminal gang known as the West Side City Crips burglarized the Lehman residence in Watertown. Included in the group that entered the home were Trawitzki, Kristy Lehman (Lehman), Chris Schoch (Schoch), Jason Glascock (Glascock), and Johnny Weiss (Weiss). Members of this group took ten firearms from various rooms and wrapped them all in a sheet, in order to carry the firearms out of the home. The firearms were then placed in the trunk of Glascock's car and taken to the Weiss residence, where they were stored in the basement. The next morning, Trawitzki, Schoch, Glascock, Weiss, Phillip Ziegler, and J.R. Robinson took five of the stolen firearms and hid them near a bridge in Helenville. Subsequently, members of this group, including Trawitzki, traveled to Minnesota where they were taken into custody near Duluth. Some of the firearms were found in their possession.

¶ 5. The State charged Trawitzki with one count of armed burglary as a party to a crime and in association with a criminal gang, in violation of Wis. Stat. §§ 943.10(1)(f), 943.10(2)(b), 939.05, and

939.625(1)(a)(1997–98).[1] The State also charged Trawitzki with ten counts of theft for taking and carrying away a firearm as a party to a crime and in association with a criminal gang, in violation of Wis. Stat. §§ 943.20(1)(a), 943.20(3)(d)5, 939.05, and 939.625(1)(a). Lastly, the State charged Trawitzki with five counts of concealing stolen property as a party to a crime and in association with a criminal gang, in violation of Wis. Stat. §§ 943.20(1)(a), 943.20(3)(d)5, 939.05, and 939.625(1)(a).

¶ 6. Trawitzki pled not guilty to all charges. He admitted being present at the Lehman residence when the ten firearms were carried out, and being present when the five firearms were concealed in Helenville, but denied participating in the crimes. He also denied being a member of the West Side City Crips.

¶ 7. The case was tried before a jury. During the trial, Lehman, Schoch, and Glascock testified for the State and implicated Trawitzki in the crimes charged. Lehman testified that Trawitzki was a member of the West Side City Crips, that Trawitzki went to the Lehman residence on August 29, and that Trawitzki carried firearms from the trunk of Glascock's car into the Weiss residence. Schoch testified that Trawitzki was a member of the West Side City Crips, that Trawitzki entered the Lehman residence on August 29, and that Trawitzki traveled to Helenville with Glascock and Ziegler to hide the firearms. Glascock testified that Trawitzki entered the Lehman residence on August 29, that Trawitzki carried a bag of ammunition out of the basement of the Lehman residence, that Trawitzki assisted in placing the firearms in the Weiss basement, and that Trawitzki went to Helenville to

---

[1] All subsequent references to the Wisconsin Statutes are to the 1997–98 version unless otherwise indicated.

hide the firearms. All three testified that they were incarcerated for their roles in the events that led to the charges against Trawitzki. In addition, all three testified while wearing jail or prison clothes.

¶ 8. The State also called other witnesses who testified to Trawitzki's involvement in the crimes, including Katy Eigenberger (Eigenberger), Steve Cira (Cira), Watertown Police Detective Kenneth Severn (Detective Severn), and Dodge County Deputy James Ketchem (Deputy Ketchem). Eigenberger, an acquaintance of Trawitzki, Lehman, Schoch, Glascock, and others in the gang, testified that, on August 30th, members of this group told her that Trawitzki, Lehman, Schoch, and Glascock broke into the Lehman residence and took firearms. Cira testified that Trawitzki was a member of the West Side City Crips. Detective Severn, who investigated the August 29th burglary at the Lehman residence, testified that Schoch told him, in an interview on January 24, 1998, that Trawitzki carried at least one firearm up from the basement of the Lehman residence on August 29th. Deputy Ketchem, who picked up Trawitzki as a runaway on August 7, 1997, testified that Trawitzki claimed to be a member of the Crips in Watertown.

¶ 9. In addition, Trawitzki's own testimony placed him at the scene of the crimes. He testified that he entered the Lehman residence on August 29th, that he saw the firearms wrapped in a sheet on the kitchen floor, and witnessed Schoch carry the firearms out of the Lehman residence. He also testified to traveling to Helenville with Glascock and Ziegler when the firearms were hidden near the bridge.

¶ 10. The jury found Trawitzki guilty of all charges. The court sentenced Trawitzki to a 15-year prison term for the burglary charge. The court with-

held sentence on the other 15 charges, placing Trawitzki on probation for 10 years on each charge, to run concurrently.

¶ 11. Trawitzki brought a post-conviction motion. He claimed that all of the firearm theft charges and the concealing stolen firearm charges were multiplicitous, because all the charges arose from "a single act of taking and a single act of concealing." (Br. in Support of Def.'s Post-conviction Mot. at 2). Trawitzki claimed that all of the firearms were removed from the Lehman residence at one time, when the firearms were wrapped in a sheet and carried out of the house. Trawitzki also argued that the legislature did not intend multiple charges for a single incidence of taking and a single act of concealing the firearms. According to Trawitzki, the legislature intended increased penalties based on the value of the items stolen, not the number of items. Trawitzki also contended that punishing theft of multiple firearms and the concealing of multiple firearms with multiple charges would lead to arbitrary and absurd results. For example, the State could charge a person with two counts of theft for stealing a pair of socks.

¶ 12. In addition, Trawitzki claimed that he was deprived of his constitutional right to the effective assistance of counsel, because his trial counsel failed to impeach Lehman, Schoch, and Glascock, by questioning them about the existence and number of their prior criminal convictions. Trawitzki suggested that the State's case against him rested primarily on the testimony of these three witnesses. Arguing that prior criminal convictions are relevant to the jury's determination of a witness' credibility, Trawitzki contended that with such information before them the jurors would have reasonably doubted the credibility of the

three witnesses, when they implicated him in the crimes charged.

¶ 13. The circuit court denied Trawitzki's post-conviction motion.[2] The circuit court held that the firearm theft charges and the concealing stolen property charges against Trawitzki were not multiplicitous, because each charge required proof of a different fact, namely, the specific identity of each firearm taken away and later concealed. The circuit court's conclusion also relied on the fact that each theft required "a new volitional act to take or conceal a different firearm." (Tr. Ct. Mem. Decision at 3). Furthermore, the circuit court held that Trawitzki could not rebut the presumption that the legislature intended separate charges in regard to each firearm. In reaching this determination, the circuit court relied on the legislature's choice to use the singular form of the word "firearm" in Wis. Stat. § 943.20(3)(d)5. The circuit court also noted that the theft statute treats firearms differently than other forms of property, punishing the theft of a firearm and the concealment thereof as a felony regardless of its value, because of the dangerousness associated with such acts in regard to firearms.

¶ 14. In addition, the circuit court held that Trawitzki was not denied effective assistance of counsel as a result of his trial counsel's failure to impeach

---

[2] In his post-conviction motion, Trawitzki also claimed that: 1) there was insufficient evidence to apply the criminal gang enhancer; 2) the jury instructions failed to require the jury to unanimously agree on the existence of two or more criminal offenses necessary to apply the criminal gang enhancer; and 3) there was a new factor which warranted the reduction of his sentence. The circuit court also rejected these arguments. Since Trawitzki did not present these issues to the court of appeals or to this court, we do not address them.

Lehman, Schoch, and Glascock with their prior criminal convictions. The circuit court concluded that trial counsel's performance was not deficient, because the choice not to impeach was a reasonable tactical decision. According to the circuit court, it was reasonable for counsel to refrain, in order not to emphasize the unfairness of the witnesses being convicted for their role in the crimes, while Trawitzki was seeking acquittal. The circuit court also determined that the decision not to impeach was reasonable, so that Trawitzki could avoid accusing his friends of lying. Moreover, the circuit court concluded that, even if trial counsel's failure to impeach constituted deficient performance, this failure did not prejudice Trawitzki's defense. The circuit court found no prejudice because: 1) the jury knew that the witnesses had criminal convictions; 2) the jury was instructed that convictions are relevant to a witness' credibility; 3) the witnesses testified that they were incarcerated for their respective roles in the burglary and thefts; 4) the witnesses testified wearing prison clothing; 5) other witnesses implicated Trawitzki in the crimes; and 6) Trawitzki's own testimony placed him at the scene of the crimes. For all these reasons, the circuit court concluded that Trawitzki failed to establish that the result of the trial would have been different had his counsel impeached the three witnesses with their convictions.

¶ 15. Trawitzki appealed the judgments of conviction and the circuit court order denying his postconviction motion.

¶ 16. The court of appeals affirmed. The court of appeals held that the firearm theft charges and the concealing stolen property charges were not multiplicitous because each charge required proof of a different fact, the identity of the individual firearm, and because

534

each charge required a separate volitional act on the part of Trawitzki. *Trawitzki,* 2000 WI App 205 at ¶ 10. The court of appeals also determined that Trawitzki did not overcome the presumption that the legislature intended to allow multiple prosecutions. *Id.* at ¶ 17. In reaching this determination, the court of appeals relied on the legislature's use of the singular phrase "a firearm" in Wis. Stat. § 943.20(3)(d)5, rather than "firearms" or "one or more firearms." *Id.* at ¶ 12. The court of appeals found that the legislative history of the theft statute provided no indication that the legislature intended but one charge when multiple firearms are taken or concealed in one episode. *Id.* at ¶ 14. In addition, the court of appeals concluded that separate charges for each firearm are appropriate to address society's concern about the spread of firearms among criminals. *Id.* at ¶ 16. According to the court of appeals, it is appropriate to separately punish the theft or concealment of each firearm, because each stolen firearm potentially places a dangerous weapon into the hands of a criminal for use in the commission of another crime. *Id.*

¶ 17. The court of appeals also held that Trawitzki was not denied his constitutional right to effective assistance of counsel when his trial counsel failed to impeach Lehman, Schoch, and Glascock with the number of their prior criminal convictions. *Id.* at ¶ 18. The court of appeals concluded that this failure to impeach did not prejudice Trawitzki's defense, because the jury knew that the three witnesses were incarcerated for their role in the crimes, giving the jury reason to question their credibility. *Id.* at ¶ 22. While the court of appeals recognized that the number of convictions is relevant to the credibility determination, it was not convinced that the result of Trawitzki's trial would

have been different had the jury known the exact number of convictions each witness had. *Id.*

## II

¶ 18. This case presents two issues for our review. One, are the separate charges against Trawitzki for each firearm taken and carried away and for each firearm concealed multiplicitous, therefore violating the constitutional prohibition against double jeopardy? Two, was Trawitzki's trial counsel ineffective for failing to impeach Lehman, Schoch, and Glascock with the number of prior criminal convictions for each witness?

¶ 19. To resolve these two issues, the following standards of review are applicable. The issue of whether a person's right to be free from double jeopardy has been violated presents a question of law that we review de novo. *State v. Anderson*, 219 Wis. 2d 739, 746, 580 N.W.2d 329 (1998). The issue of whether a person has been deprived of the constitutional right to the effective assistance of counsel presents a mixed question of law and fact. *State v. Johnson*, 153 Wis. 2d 121, 127, 449 N.W.2d 845 (1990). We will uphold the circuit court's findings of fact unless they are clearly erroneous. *Id.* Whether counsel's performance was deficient and prejudicial presents a question of law that we review de novo. *Id.* at 128.

## III

¶ 20. We first consider Trawitzki's claim that the firearm theft charges and the concealing stolen firearm charges are multiplicitous. The double jeopardy clauses of the Fifth Amendment to the United States

536

Constitution and Article I, Section 8 of the Wisconsin Constitution, which are nearly identical, protect a person from being "placed twice in jeopardy of punishment for the same offense." *State v. Sauceda,* 168 Wis. 2d 486, 492, 485 N.W.2d 1 (1992). These clauses provide three protections: 1) "protection against a second prosecution for the same offense after acquittal;" 2) "protection against a second prosecution for the same offense after conviction;" and 3) "protection against multiple punishments for the same offense." *Id.* This case involves the third of the double jeopardy protections.

¶ 21. To resolve the issue of whether the charges against Trawitzki are multiplicitous, we must apply the well-established two-part multiplicity test. First, we must determine whether the charged offenses are identical in law and fact. *Anderson,* 219 Wis. 2d at 746.[3] If the charged offenses are identical in law and in fact, then they are multiplicitous, and are therefore in violation of the double jeopardy clauses of the United States and Wisconsin Constitutions. *Id.* at 747. Second, if the charged offenses are not identical in law and in fact, we must determine whether the legislature intended multiple prosecutions for the charged

[3] This test has been referred to by this court as the "elements only test" from *Blockburger v. United States,* 284 U.S. 299 (1932), the "additional fact" test, the "different fact" test, and the "identical in law and fact" test. *State v. Sauceda,* 168 Wis. 2d 486, 493 n.8, 485 N.W.2d 1 (1992). Regardless of the name of the test, the analysis under the first part of the multiplicity test is the same regardless of whether the charges are brought under multiple statutes or whether the charges are brought under the same statute. *State v. Anderson,* 219 Wis. 2d 739, 747, 580 N.W.2d 329 (1998).

offenses. *Id.* at 751. If we conclude that the legislature intended a single charge for the offenses, then the charged offenses are multiplicitous. *Id.* at 752.

¶ 22. It is only the first part of the multiplicity test that involves the constitutional double jeopardy provisions. *State v. Grayson,* 172 Wis. 2d 156, 159 n.3, 493 N.W.2d 23 (1992). If the charged offenses are not identical in law and in fact, then we are no longer concerned with a double jeopardy violation. *Id.* The second part of this test is not a constitutional inquiry, but rather a question of statutory interpretation. *Id.* The second part of the test "focuses on the legislative intent as to the allowable unit of prosecution under the statute in question." *State v. Rabe,* 96 Wis. 2d 48, 63, 291 N.W.2d 809 (1980). When charged offenses are deemed multiplicitous under this part of the test, they are so because multiple charges are contrary to the will of the legislature. *Grayson,* 172 Wis. 2d at 159 n.3.

¶ 23. The State argues that the firearm theft charges and the concealing stolen property charges against Trawitzki are not multiplicitous. The State contends that the charges are different in fact because each charge requires proof of a fact that another charge does not, namely, the identity of the specific firearm. In addition, the State claims that the theft and concealment of each firearm required a separate volitional act; that is, a choice to take each firearm out of the Lehman residence and a choice to conceal each firearm near the bridge in Helenville.

¶ 24. The State also argues that Trawitzki cannot overcome the presumption that the legislature intended separate charges for each firearm. In making this argument, the State relies on the plain language of the statute, in which the legislature used the phrase "a

538

firearm." According to the State, the legislature's choice to use the singular form of the word "firearm," rather than the plural, indicates that the legislature intended a separate charge for each firearm. The State further contends that the legislative history of Wis. Stat. § 943.20(3)(d)5 indicates that the legislature intended multiple charges. The State claims that when the legislature changed the statute to make the theft or concealment of a firearm a felony regardless of value, the legislature meant to emphasize the dangerousness of each individual firearm. Lastly, the State argues that multiple punishments for the theft and for the concealment of multiple firearms are appropriate to address society's concern regarding the proliferation of firearms among criminals.

¶ 25. Trawitzki argues that the ten firearm theft charges and the five concealing charges are multiplicitous because the charges are identical in law and in fact. Trawitzki contends that the charges are identical in law because all of the charges arise under the same statute. According to Trawitzki, the charges are also identical in fact. Trawitzki claims that, even though the theft charges each involve a different firearm, all of the charges arose from a single transaction. He claims that the concealing charges likewise arose from a single incident. The ten theft charges for taking and carrying away arose out of a single act of taking the firearms out of the Lehman residence and the five charges for concealing arose out of a single act of hiding the firearms. Trawitzki contends that the fact that each charge involves a different firearm is not significant because the focus of the statute is on the criminal act of taking or of concealing, not the nature of the property.

¶ 26. Trawitzki also argues that, when multiple charges are brought under the same statute, the presumption that the legislature intended multiple punishments is inappropriate. Trawitzki claims that this presumption is contrary to the established principle that criminal statutes should be construed strictly in favor of the accused, and that this presumption prevents an objective determination of legislative intent.

¶ 27. Trawitzki contends that the legislature did not intend separate charges for each firearm. According to Trawitzki, the structure of the statute demonstrates that the legislature intended to increase the punishment based on the value of items stolen, not the number of items. Trawitzki submits that increasing the punishment depending on the number of items would lead to absurd results, such as charging a person with two counts of theft for taking one pair of shoes. Trawitzki argues that the legislature's decision to punish the theft or concealment of a firearm more severely than other property does not mean that the legislature intended separate charges for each firearm. Trawitzki points to the fact that the statute punishes the theft of domestic animals more severely. Trawitzki then suggests that it would be an absurd result to charge a person with eight counts of theft for taking a litter of eight kittens. Furthermore, Trawitzki claims that the legislature's use of the phrase "a firearm" does not mean that the legislature intended separate charges because, when construing statutes, the singular form of a word also includes the plural, relying on Wis. Stat. § 990.001(1). Lastly, Trawitzki argues that there is nothing in the legislative history of the statute to support the conclusion that the legislature intended separate charges for each firearm.

¶ 28. We apply the first part of the multiplicity test and conclude that the firearm theft charges and the concealing stolen firearms charges against Trawitzki are not identical in law and in fact. As both parties concede, the charges are identical in law because they arise under the same criminal statute, Wis. Stat. § 943.20(1)(a). However, the charges against Trawitzki are not identical in fact. The test for whether charges are not identical in fact is whether "the facts are either separated in time or of a significantly different nature." *Anderson*, 219 Wis. 2d at 749. To be of a significantly different nature, each charged offense must require proof of an additional fact that the other charges do not. *Id.* at 750. In this case, each theft charge and each concealment charge against Trawitzki does require proof of an additional fact that the other charges do not, namely, the identity of the individual firearm. Because each charge alleges that Trawitzki either took or concealed a specific firearm, the State must prove the identity of the specific firearm. For example, the first firearm theft charge alleges that Trawitzki took and carried away a Smith & Wesson model 28 N-frame 6" revolver with satin stainless steel finish and black rubber grips. The State must prove, therefore, that Trawitzki did exactly what is alleged. The second firearm theft charge alleges that Trawitzki took and carried away a Star PD 45 semi-auto 4" blue/alloy frame pistol. Consequently, the State must prove that.

¶ 29. Our conclusion that the charges against Trawitzki are not identical in fact is consistent with previous decisions by this court. In *Anderson*, we held that multiple charges of bail jumping were not identical in fact, because each charge required proof of a fact

541

that the other charge did not, the specific violation of a condition of bail. 219 Wis. 2d at 751. We concluded that one charge of bail jumping required proof that Anderson consumed alcohol, while another charge required proof that Anderson had contact with his previous battery victim. *Id.* We have reached similar conclusions in other cases. *See also Rabe,* 96 Wis. 2d at 66 (holding that multiple homicide charges, for the deaths of four people resulting from the intoxicated use of a motor vehicle, were not identical in fact, because each charge required proof of the death of the specific victim) and *Madison v. Nickel,* 66 Wis. 2d 71, 83–84, 223 N.W.2d 865 (1974) (holding that four obscenity charges, for the sale of four obscene magazines in one transaction, were permissible because each charge required proof of the sale of a particular magazine).

¶ 30. Having determined that the firearm theft charges and the concealment charges against Trawitzki are not identical in law and in fact, we apply the second part of the multiplicity test, whether the legislature intended multiple charges. *Anderson,* 219 Wis. 2d at 746. Because the charges against Trawitzki are not identical in fact, we presume that the legislature intended separate charges for the theft and for the concealment of each firearm. *See id.* at 751. Trawitzki may rebut this presumption only by a clear indication of legislative intent to the contrary. *See id.* We consider four factors in discerning legislative intent for a multiplicity challenge: "1) statutory language; 2) legislative history and context; 3) the nature of the proscribed conduct; and 4) the appropriateness of multiple punishment." *Id.* at 751–52.

¶ 31. We apply this four-factor examination and conclude that Trawitzki has not overcome the pre-

sumption that the legislature intended separate charges for the theft and for the concealment of each firearm. With respect to the first factor, nothing in the language of Wis. Stat. § 943.20 clearly indicates that the legislature intended one charge for the theft and one charge for the concealment of multiple firearms. In fact, the penalty provision of the statute uses the phrase "a firearm." Wis. Stat. § 943.20(3)(d)5. The legislature's use of the singular form of the word "firearm" indicates that the legislature intended a separate charge for each individual firearm.[4] An example of language that would provide a clear indication that the legislature intended one charge regardless of the number of firearms would be "one or more firearms." We agree with Trawitzki that Wis. Stat. § 990.001(1) states that, when construing statutes, the singular form of a word includes the plural. However, this rule of statutory construction renders the phrase "a firearm" in the statute, at best, ambiguous regarding the allowable unit of prosecution. Even if we construe the phrase "a firearm" to include the singular and the plural, this construction does not provide a clear indication that the legislature intended one charge for

---

[4] The dissent claims that it is the act of theft, rather than the object of the theft, that determines the appropriate number of charges. Dissent at ¶ 53 n.1. However, the only source that the dissent relies upon for this proposition, a Wisconsin Law Review article by Frank J. Remington and Allan J. Joseph, was published in 1961, well before the legislature changed Wis. Stat. § 943.20, in 1977, to separate the theft of a firearm from the thefts of other forms of property. Ch. 255, Laws of 1977. Consequently, this law review article provides no guidance on the proper interpretation of § 943.20, in regard to the multiplicity issue.

the theft and one charge for the concealment of multiple firearms.

¶ 32. In considering the second factor, we find that there is no legislative history for Wis. Stat. § 943.20 which clearly indicates that the legislature did not intend multiple charges. In fact, our review of the legislative history of the statute indicates that the legislature did intend separate charges for each firearm. The legislature changed the statute, by virtue of Chapter 255, Laws of 1977, from punishing the taking or concealing of property based only on the value of the property, to punishing the taking or the concealing of a firearm with a Class D felony, regardless of the value of the firearm. The drafting record of Chapter 255, Laws of 1977 indicates that the legislature changed the penalty section of the statute to emphasize the danger associated with each stolen firearm. In Assembly Amendment 1 to 1997 Assembly Bill 130, which would later become Chapter 255, Laws of 1977, the legislature amended the penalty section of the statute from the phrase "dangerous weapons" to the phrase "a firearm." This change from the plural to the singular, and from the generic term "dangerous weapons" to the specific term "a firearm," demonstrates that the legislature was concerned with the theft or the concealment of each individual firearm. Furthermore, Representative Stanley Lato, in a drafting request to the Legislative Reference Bureau, stated that "the idea [behind Chapter 255, Laws of 1977 is] to change from monetary amount to the danger involved with the weapon." Since it appears that the legislature changed the statute to reflect a concern about the dangerousness of each stolen firearm, it follows that the legislature intended separate charges for each stolen firearm.

¶ 33. Under this second factor, we also examine the context of the statute. *Anderson*, 219 Wis. 2d at 751. Context is defined as "[t]he part of a text or statement that surrounds a particular word or passage and determines its meaning." *The American Heritage Dictionary* 407 (3d ed. 1992). In this case, we look at the structure of the penalty section of the statute, which surrounds the specific penalty provision regarding the theft or the concealment of a firearm. In the penalty section of the statute, there are three classifications for the taking or the concealing of property. Wis. Stat. § 943.20(3). For punishment purposes, these classifications are treated differently. The first classification relates to general property, which is punished according to the value of the property. Wis. Stat. § 943.20(3)(a)–(c). The second classification relates to property under certain circumstances, such as property taken after a physical disaster, punished as a Class D felony. Wis. Stat. § 943.20(3)(d)4. The third classification relates to certain kinds of property, such as a firearm or a domestic animal, punished as a Class D felony. Wis. Stat. § 943.20(3)(d)1 and 5. Since the legislature separated the taking or concealing of a firearm from the taking or concealing of other kinds of property, it follows that the legislature intended separate charges for each firearm involved.

¶ 34. The fact that the penalty section of the statute divides property into three classifications leads to us to reject Trawitzki's argument that absurd results will follow from our decision. According to Trawitzki, the decision to allow multiple charges will lead to arbitrary and absurd results, such as charging a person with two counts of theft for stealing one pair of shoes. This comparison is inappropriate because shoes and

firearms are treated differently by the statute.[5] A pair of shoes falls under the first classification, punished according to the value of the property. A firearm falls under the third classification, punished as a Class D felony regardless of the firearm's value. Therefore, a defendant accused of stealing one pair of shoes will be charged according to the value, not the number, of the shoes.

¶ 35. The third factor, the nature of the proscribed conduct, fails to indicate clearly that the legislature did not intend multiple charges. The nature of the proscribed conduct, the theft of a firearm or the concealing of a stolen firearm, is dangerous to society. Each firearm stolen might result in putting a dangerous weapon into the hands of a criminal. The criminal can then use that firearm in the commission of another crime. In this case, Trawitzki, and the other members of the West Side City Crips, took ten firearms from the Lehman residence. Consequently, this criminal gang gained ten firearms to use in the commission of other crimes. This increased the ability of the West Side City Crips to commit crimes and increased the threat to society posed by this gang. If each stolen firearm increases the threat to society, then the theft of each

[5] The dissent suggests that our conclusion will lead to multiple charges based on the number of items of property stolen in the ordinary theft case. Dissent at ¶ 64. According to the dissent, the State advanced the position, at oral argument, that the theft of five compact discs could result in five theft charges. *Id.* If the State made such an argument, we are not persuaded by it. As stated above, firearms are treated differently from other forms of property, including compact discs, in Wis. Stat. § 943.20. Accordingly, the comparison between firearms and compact discs is not a valid one.

firearm and the concealing of each stolen firearm may be charged separately.

¶ 36. The fourth and final factor, the appropriateness of multiple punishments, also fails to clearly indicate that the legislature did not intend multiple prosecutions. As stated above, the theft and concealment of each firearm increases the danger posed to society. Accordingly, it is appropriate to punish the taking and the concealing of each firearm separately. Imposing a punishment in regard to each individual firearm serves two purposes. First, each punishment will serve as a sanction for the increased potential danger posed to society by each firearm. Second, each punishment will hopefully deter both the defendant, and others, from taking or concealing even one more firearm.

¶ 37. We therefore conclude that the firearm theft and concealment charges against Trawitzki are not multiplicitous, because the charges are not identical in fact, and because Trawitzki failed to rebut the presumption that the legislature intended multiple prosecutions under these circumstances.

¶ 38. We now turn to the second claim in Trawitzki's post-conviction motion, that his trial counsel was ineffective for failing to impeach Lehman, Schoch, and Glascock with the number of their prior criminal convictions.

¶ 39. Both the Sixth Amendment to the United States Constitution and Article I, Section 7 of the Wisconsin Constitution afford a criminal defendant the right to counsel. This right to counsel includes the right to the effective assistance of counsel. *Johnson*, 153 Wis. 2d at 126 (citing *McMann v. Richardson*, 397 U.S. 759,

771 n.14 (1970)). To determine whether counsel was ineffective, we apply the test adopted by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *Johnson*, 153 Wis. 2d at 126. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

¶ 40. The *Strickland* test for ineffective assistance of counsel is a two-part test. The first part of the test requires a defendant to show that counsel's performance was deficient. *Johnson*, 153 Wis. 2d at 127. In order to satisfy this part of the test, a defendant must demonstrate that counsel made serious errors so that " 'counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.' " *Id.* (citing *Strickland*, 466 U.S. at 687). We give great deference to counsel's performance, and, therefore, a defendant must overcome "a strong presumption that counsel acted reasonably within professional norms." *Johnson*, 153 Wis. 2d at 127. If the defendant establishes that counsel's performance was deficient, then the defendant must satisfy the second part of the *Strickland* test and prove that this deficient performance prejudiced the defense. *Id.* To make this showing, the defendant has the burden to prove that " 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.* at 129 (quoting *Strickland*, 466 U.S. at 694). " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Id.* We may dispense with the first part of the *Strick-*

*land* test, if the defendant fails to establish prejudice. *Johnson*, 153 Wis. 2d at 128.

¶ 41. The State argues that Trawitzki's trial counsel was not ineffective by failing to impeach Lehman, Schoch, and Glascock in regard to the number of prior criminal convictions of each witness. The State claims that this failure did not prejudice Trawitzki's defense, because the jury knew that, at the time they testified, each one was incarcerated for their involvement in the events that led to the charges against Trawitzki. Therefore, the State claims that the jury had reason to question the credibility of Lehman, Schoch, and Glascock. The State concedes that the number of their convictions might have decreased their credibility with the jury; however, the State contends that it would not have diminished their credibility enough to cast a reasonable doubt on Trawitzki's conviction. The State further argues that the failure to impeach on the number of convictions did not prejudice the defense, because other witnesses testified to Trawitzki's involvement in the crimes and Trawitzki's own testimony placed him at the scene of the crimes. Lastly, the State contends that the decision not to impeach Lehman, Schoch, and Glascock in such a manner was a reasonable one, because the jury could have associated their guilt with Trawitzki.

¶ 42. Trawitzki argues that his trial counsel was ineffective for failing to raise the number of convictions in order to impeach Lehman, Schoch, and Glascock. According to Trawitzki, trial counsel's decision not to impeach these witnesses was not objectively reasonable, and, therefore, constituted deficient performance, because the number of prior convictions of a witness is relevant to the jury's credibility determination. Trawitzki contends that impeachment was a necessary

part of his defense, because he denied participating in the crimes, claiming that his accusers, Lehman, Schoch, and Glascock, actually perpetrated the crimes. Furthermore, Trawitzki argues that trial counsel's justification for failing to raise the number of prior convictions, that he did not want the jury to associate the witnesses' guilt with Trawitzki, was unreasonable, because the jury was instructed to use prior convictions only to judge a witness' credibility, and for no other purpose. Wis JI—Criminal 325. Trawitzki also argues that the failure to impeach prejudiced his defense. Trawitzki claims that the case against him rested primarily on the testimony, and therefore the credibility, of these three witnesses. Trawitzki contends that, had the jury known about the witnesses' prior convictions, it would have created a reasonable doubt as to the truthfulness of their testimony, and, subsequently, about Trawitzki's guilt.

¶ 43. We apply the second prong of the *Strickland* test and conclude that Trawitzki's counsel was not ineffective for failing to impeach Lehman, Schoch, and Glascock with the number of their prior criminal convictions. We dispense with the inquiry as to whether this failure amounts to deficient performance, because we conclude that Trawitzki has not satisfied the burden to prove that this failure prejudiced his defense. *Johnson*, 153 Wis. 2d at 128.

¶ 44. Trawitzki has not established that there is a reasonable probability that the result of his trial would have been different, if his trial counsel had impeached Lehman, Schoch, and Glascock with the number of their prior convictions. From their testimony on direct examination, the jury knew that all three were incarcerated because of their participation

in the crimes that led to the charges against Trawitzki. In addition, all three testified wearing jail or prison clothes. Therefore, the jury had reason to question the credibility of all three witnesses. While the exact number of convictions might have incrementally weakened the credibility of the witnesses, this decrease is not enough to establish a reasonable probability that the jury would have reached a different verdict. Confidence in the outcome of the trial is not undermined by the failure to impeach with the numbers of convictions of each witness.

¶ 45. Moreover, the failure to impeach the three witnesses did not prejudice Trawitzki's defense, because they were not the only ones to implicate Trawitzki in the firearm thefts and concealment. When there is strong evidence supporting a verdict in the record, it is less likely that a defendant can prove prejudice. *Strickland*, 466 U.S. at 696. Eigenberger testified that members of the West Side City Crips, including Trawitzki himself, told her that Trawitzki entered the Lehman residence and took firearms. Cira testified that Trawitzki was a member of the West Side City Crips. Detective Severn testified that Schoch told him that Trawitzki carried at least one firearm up from the basement of the Lehman residence. Deputy Ketchem testified that Trawitzki claimed to be a member of the Crips of Watertown. In addition, Trawitzki's own testimony placed him at the Lehman residence, when the firearms were taken, and at the scene in Helenville, when the firearms were hidden.

¶ 46. In summary, we conclude that the ten firearm theft charges for taking and carrying away and the five firearm theft charges for concealment are not multiplicitous, because the charges are not identical in

fact, and because Trawitzki cannot rebut the presumption that the legislature intended multiple prosecutions. We further conclude that Trawitzki's trial counsel was not ineffective for failing to impeach Lehman, Schoch, and Glascock with the number of their prior criminal convictions, because Trawitzki has not established that this failure prejudiced his defense. Confidence in the outcome of the trial has not been undermined by such failure.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 47. ANN WALSH BRADLEY, J. *(dissenting).* At issue in this case is the permissible unit of prosecution under the theft statute, Wis. Stat. § 943.20. I believe that the permissible unit of prosecution for theft is found in the statutory definition of the crime. In examining the statutory definition, I conclude that the legislature did not intend that two discrete violations of the theft statute be parsed into fifteen separate charges.

¶ 48. Yet, the majority ignores the unit of prosecution defined by the statute and determines the unit of prosecution to be the number of firearms stolen. In defining the underlying substantive offense by looking to the penalty provision of the statute, the majority is allowing the tail to wag the dog. Because the majority misreads the statute, misconstrues the legislative history, and allows for gross over-prosecution of theft offenses, I respectfully dissent.

¶ 49. In essence, today's case should be viewed as an inquiry into legislative intent. *See Bell v. United States*, 349 U.S. 81, 82–83 (1955). Whether the defendant's challenge is addressed under a multiplicity

analysis or as a question of statutory interpretation, the intent of the legislature is ultimately determinative of the appropriate unit of prosecution. *See Missouri v. Hunter*, 459 U.S. 359, 366–67 (1983).

¶ 50. The majority misreads § 943.20 when it concludes under its multiplicity analysis that these offenses are not the same in law and fact. The majority hinges its conclusion that the offenses are not the same in fact on the assertion that the State must prove the identity of each specific firearm. Majority op. at ¶ 28. However, under a proper construction of the statute, no such proof is needed.

¶ 51. With respect to theft, the unit of prosecution intended by the Wisconsin legislature is embodied in § 943.20(1)(a), which provides the substantive definition of the offense:

> (1) ACTS. Whoever does any of the following may be penalized as provided in sub. (3):
> (a) Intentionally takes and carries away, uses, transfers, conceals, or retains possession of movable property of another without the other's consent and with intent to deprive the owner permanently of possession of such property.

When the State has convinced a jury beyond a reasonable doubt that all of these elements are satisfied, a defendant is guilty of the crime of theft.

¶ 52. Under § 943.20(1)(a), theft is defined by the defendant's conduct in engaging in one of the enumerated acts. Provided that the property is moveable property of another, the nature of that property is irrelevant to the initial question of whether the defendant is guilty of theft. *Cf. Sartin v. State*, 44 Wis. 2d 138, 148, 170 N.W.2d 727 (1969) (value of property stolen is not an element of the crime of theft). The substantive definition of the offense leaves no room for asking what

was taken, how many were taken, or from whom specifically the property was taken. The sole focus is the act of the defendant.

¶ 53. It follows that the number of charges allowable is dependent upon the number of such acts that were committed. The appropriate unit of prosecution is the act that violates § 943.20(1). In this case there were two such acts: the act of taking the guns from the Lehman home and the subsequent act of concealing them. Accordingly, it is permissible under § 943.20(1)(a) that Trazwitzki be charged with two violations of the statute.[1]

¶ 54. Only after the substantive elements of the offense have been established is the nature of the property relevant. The statute is divided into three subsections: (1) Acts, (2) Definitions, and (3) Penalties.

---

[1] The commentary of one authority who sat on the Criminal Code Advisory Committee that assisted in the drafting of Wis. Stat. § 943.20 and the 1955 criminal code, reveals that it is the act, and not the object of the offense, that defines the appropriate unit of prosecution in theft cases:

> Where several items are taken or damaged by a single act, it seems that only one offense can be charged. For example, a defendant who steals a suitcase cannot be charged with separate thefts for each item of clothing contained in the suitcase. Nor can a defendant who takes two suitcases at the same time and from the same place be so charged. However, where the thefts or acts of damage occur at different times or at different places the prosecution can, but need not, charge a single offense.

Frank J. Remington & Allan J. Joseph, *Charging, Convicting, and Sentencing the Multiple Criminal Offender*, 1961 Wis. L. Rev. 528, 540.

The same view pervades the statutory and common law of a majority of states. *See, e.g.,* 37 A.L.R.3d 1407, 1409 (1971) (explaining that a majority of jurisdictions subscribe to the "single larceny doctrine").

Under the express terms of the statute, the penalty provisions are not triggered until a violation of subsection (1), "Acts," is established. *See* Wis. Stat. § 943.20(3) ("Penalties. Whoever violates sub. (1). . . ."). It is only under the penalty provisions that we are required to examine the nature of the property that is the object of the theft.

¶ 55. In the ordinary case, subsection (3), "Penalties," requires that the value of the property taken (or concealed) in an act of theft under § 943.20(1)(a) be assessed after a theft violation of subsection (1) is established. Wis. Stat. § 943.20(3). The value of the property taken will determine the appropriate penalty level.

¶ 56. However, the legislature has placed special emphasis on two kinds of property that will allow for a heightened penalty where they are the object of the theft: domestic animals and firearms. § 943.20(3)(d)1 & 5. When a firearm is the object of a theft and where the value of the property taken does not exceed $2,500, the defendant's theft conviction is classified as a Class D felony, and the defendant may be properly sentenced to a term of imprisonment not to exceed ten years. If the property that is the object of the act of theft exceeds $2,500, the defendant is guilty of a Class C felony. The same analysis applies to domestic animals.

¶ 57. Proper construction of § 943.20 in this case would require that the jury first answer whether the elements of § 943.20(1)(a) were satisfied. Upon that determination, the jury would then have to decide whether a firearm was an object of the theft. *See* Wis JI—Criminal 1441B cmt. If so, the defendant may be sentenced to a term of imprisonment not to exceed ten years, regardless of the value of that weapon.

¶ 58. Thus, contrary to the majority's assertions, the State must simply prove, in addition to the other elements of the offense, that the defendant took and concealed the movable property of another. Nothing in the statutory scheme requires the State to prove the identity of each individual weapon. If the State desires to pursue a Class D felony it must then prove that a firearm was the object of the theft.

¶ 59. The fact that more than one firearm was taken and more than one was concealed should be relevant only in determining the overall value of the property taken and concealed. If upon aggregating the value of all the guns, the value exceeds $2,500, the defendant may be sentenced to a term of imprisonment not to exceed 15 years (Class C felony).[2] However, the number of firearms stolen does not define the number of theft convictions that are permissible.

¶ 60. The majority also misreads the legislative history in justifying its result. I agree with the court of appeals' conclusion that "[t]he history of Wis. Stat. § 943.20 offers little insight as to what the legislature intended regarding the allowable unit of prosecution when a number of firearms are stolen or concealed in a single episode of theft." *State v. Trawitzki*, 2000 WI App 205, ¶ 14, 238 Wis. 2d 795, 618 N.W.2d 884. All that the legislative history reveals is an intent to increase the penalty when the object of a theft is a firearm. An offense that might otherwise be a misdemeanor under Wis. Stat. § 943.20(3)(a), because of limited value, is treated as a felony. The legislative

---

[2] Indeed, in the case at hand it seems that the appropriate penalty for the act of taking and carrying away the ten firearms should have been a Class C felony. The State advances in its brief, and the criminal complaint reflects, that the alleged aggregated value of these weapons exceeded $2,500.

emphasis on the danger of a stolen firearm that the majority describes is reflected in the increased penalty.

¶ 61. The legislative history does not indicate that the legislature intended that a new offense be created. The crime is theft, not theft of a firearm. The increase in the penalty does not change the nature of the underlying offense. The required proof for a theft conviction remains the same. It is unfounded to infer from the legislative history that the upgrading of the offense of theft where a firearm is involved to a Class D felony is tantamount to the creation of the new offense of theft of a firearm. Yet, that is exactly what the majority infers. While the legislature may no doubt create such an offense, it simply has not done so.

¶ 62. The unfortunate consequence of the majority's opinion is the gross over-prosecution that its decision will allow. In the instant case, Jason Trawitzki, age 16, committed two theft offenses. Nonetheless, at the hands of a zealous prosecutor and majority of this court, he is marked for the remainder of his life as a felon—15 times over—for those two offenses.

¶ 63. The majority attempts to limit its decision to the theft of firearms under § 943.20(3)(d)5. *See* majority op. at ¶ 34. Its attempts are futile. By deconstructing the theft statute in a manner that allows the unit of prosecution required by the statute to be ignored, today's decision may have untold consequences in ordinary theft cases.

¶ 64. Under the majority's analysis an overzealous prosecutor may now be free to disregard the unit of prosecution defined by § 943.20(1)(a), and through artful pleading can subdivide any act of theft into any number of charges. *See* majority op. at ¶ 14. Indeed, at oral argument the State advanced the untenable posi-

557

tion that an ordinary theft offense may be subdivided into numerous charges based on the individual items stolen. The State believes that the theft of five compact discs in one episode of theft may result in five separate theft charges. Because it is now apparently the prosecutor's, and not the legislature's, definition of the offense that controls, the presumption of the validity of separate charges in such a case will attach. It may take some careful analysis on the part of the majority to prevent today's decision from having such an effect in future cases.

¶ 65. While I agree with the majority's conclusions regarding the effectiveness of Trawitzki's trial counsel, I disagree with its conclusions regarding the allowable number of theft charges. The majority's result can be justified only through its misreading of § 943.20 and misconstruing of the legislative history. By defining the unit of prosecution in theft cases in a manner that ignores the statutory text and misinterprets the legislative history, the majority may have opened the door to the unbridled over-prosecution of theft offenses.

¶ 66. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON and Justice WILLIAM A. BABLITCH join this opinion.