State of Wisconsin, Plaintiff-Respondent,
v.
Luis A. Alvarenga, Defendant-Appellant.
No. 03-1585-CR.
Court of Appeals of Wisconsin.
Opinion Filed: April 13, 2004.
Before Wedemeyer, P.J., Fine and Curley, JJ.
¶1. PER CURIAM.
Luis A. Alvarenga appeals from a judgment convicting him of one count of homicide by negligent handling of a dangerous weapon, in violation of Wis. Stat. § 940.08(1) (1997-98), one count of false imprisonment, in violation of Wis. Stat. § 940.30, and one count of second-degree recklessly endangering safety, in violation of Wis. Stat. § 941.30(2).[1] He also appeals from an order denying his motion for postconviction relief. Alvarenga contends that because there was an inadequate factual basis to support his guilty pleas a manifest injustice occurred, the multiple charges and consecutive sentences violate his constitutional guarantee against double jeopardy, and the trial court erroneously exercised its sentencing discretion. Because Alvarenga has failed to establish a manifest injustice entitling him to the withdrawal of his plea, his double jeopardy rights were not violated, and the trial court did not erroneously exercise its sentencing discretion, we affirm.

I. Background.
¶2. According to the criminal complaint, on August 15, 1997, Alvarenga, then forty-one years old, went to his girlfriend's home around 1:00 a.m., after he had been drinking at a bar. Alvarenga's girlfriend, her daughter, and eighteen-year-old Pablo Medina were all in the home when he arrived. The girlfriend and her daughter were in one of the bedrooms, and it appears that Medina was in the other. A fight ensued between Alvarenga and Medina. During the struggle, Medina was stabbed multiple times. Ultimately, he died as a result of at least one of the stab wounds.
¶3. Although no witnesses observed the fight, Alvarenga's girlfriend was in the next room. She allegedly told the police that she heard Alvarenga tell Medina to get out. She also heard Medina say, "get off me." According to the complaint, Medina subsequently came into her bedroom and said, in Spanish, "he stabbed me." She then saw Alvarenga pass her bedroom door, heading towards the exit of her home.
¶4. On August 18, 1997, an arrest warrant was issued. Alvarenga, however, fled to Chicago immediately after the incident. He was not apprehended until 2002, when he was arrested in Chicago and extradited to Wisconsin.
¶5. In April 2002, Alvarenga was arrested and charged with first-degree reckless homicide. After plea negotiations, an amended information was filed charging Alvarenga with: (1) one count of homicide by negligent handling of a dangerous weapon; (2) one count of false imprisonment; and (3) one count of second-degree recklessly endangering safety. Although Alvarenga did not agree entirely with the version of the incident related by his former girlfriend, he agreed that the criminal complaint was sufficient to establish all three counts. Alvarenga pled guilty to all three charges.
¶6. At sentencing, Alvarenga maintained that Medina attacked him with a knife. He insisted that he never held the knife, but was able to grab Medina's wrist while Medina had possession of the knife and stab him. Alvarenga also alleged that he fled because he believed that the victim's brother was associated with a gang, and he feared retaliation. However, Alvarenga also admitted that a sufficient factual basis existed for all three counts. He was sentenced to a total of nine years: five years on the first count, and two years on each of the two remaining counts, to be served consecutively. Alvarenga filed a postconviction motion requesting that his convictions be vacated or, in the alternative, that his sentence be modified. That motion was denied. He now appeals.

II. Analysis.

A. There was an adequate factual basis to support Alvarenga's guilty pleas.
¶7. Alvarenga contends that there was "no basis for the court to accept the pleas for the charged crimes and the court never accepted the complaint as the factual basis." He insists that both the judge that accepted the plea and the judge that sentenced him raised questions about the factual basis for each charge, but "did not thereafter determine whether facts established all requisite elements in conformity with legal standards[.]" Alvarenga argues that the trial court that accepted his plea failed to "follow protocol," made no findings, and had no basis to accept his guilty pleas. He contends that even though the trial court said that it accepted the amended information as the appropriate charging document, it "never expressly found the factual basis for the pleas." Although he insists that "the complaint did not provide any facts relevant to the struggle or death of [the victim] to sustain all three charges[,]" he only seems to specifically challenge the basis for the second-degree recklessly endangering safety charge. Alvarenga also asserts that the statements or "assurances" of counsel were not sufficient because the trial court had "an independent duty to determine whether there existed a sufficient factual basis to sustain the convictions[.]" As such, Alvarenga insists that this court should vacate his guilty pleas to correct this alleged manifest injustice.
¶8. "The withdrawal of a guilty plea is not a `right,' but is addressed to the sound discretion of the trial court and will be reversed only for an [erroneous exercise] of that discretion." State v. Booth, 142 Wis. 2d 232, 237, 418 N.W.2d 20 (Ct. App. 1987) (citation omitted). After sentencing, the defendant is required to show a "manifest injustice" in order to be entitled to plea withdrawal. Id. at 235; State v. Nawrocke, 193 Wis. 2d 373, 378, 534 N.W.2d 624 (Ct. App. 1995). That showing must be by clear and convincing evidence, and the burden of proof is on the defendant, see State v. Rock, 92 Wis. 2d 554, 559-60, 285 N.W.2d 739 (1979), because "[o]nce the defendant waives his [or her] constitutional rights and enters a guilty plea, the state's interest in finality of convictions requires a high standard of proof to disturb that plea[,]" State v. Thomas, 2000 WI 13, ¶16, 232 Wis. 2d 714, 605 N.W.2d 836 (citation omitted). Accordingly, the manifest injustice test requires "the showing of a serious flaw in the fundamental integrity of the plea." Nawrocke, 193 Wis. 2d at 379.
¶9. If a trial court "fails to establish a factual basis that the defendant admits constitutes the offense pleaded to, manifest injustice has occurred." Thomas, 232 Wis. 2d 714, ¶17. Yet, "[w]here the trial court has concluded that the evidence did provide a sufficient factual basis to support the plea, [an appellate] court will not upset these factual findings unless they are contrary to the great weight and clear preponderance of the evidence." Broadie v. State, 68 Wis. 2d 420, 423, 228 N.W.2d 687 (1975). In deciding a motion to withdraw challenging the guilty plea procedure, the trial court can consider the totality of the circumstances, including the records of the plea hearing and sentencing, the statements of defense counsel, and other portions of the record. Thomas, 232 Wis. 2d 714, ¶18. Furthermore, "a defendant does not need to admit to the factual basis in his or her own words; the defense counsel's statements suffice." Id.
¶10. Wisconsin Stat. § 971.08(1)(b) (2001-02) provides:" Before the court accepts a plea of guilty or no contest, it shall ... [m]ake such inquiry as satisfies it that the defendant in fact committed the crime charged." However, "[n]owhere in our case law ... do we require a judge to make a factual basis determination in one particular manner." Thomas, 232 Wis. 2d 714, ¶21. As such, "a judge may establish the factual basis as he or she sees fit, as long as the judge guarantees that the defendant is aware of the elements of the crime, and the defendant's conduct meets those elements." Id., ¶22. Further, when the guilty plea is the result of plea negotiations," the court need not go to the same length to determine whether the facts would sustain the charge as it would where there is no negotiated plea." Broadie, 68 Wis. 2d at 423-24.
¶11. In its denial of Alvarenga's postconviction motion, the trial court determined that "the factual basis was carefully, clearly and sufficiently set forth, both by counsel and by the defendant in response to the court's questions." We agree. A review of the record indicates that the trial court explained each of the charges and each of their respective elements. Among other things, the trial court also informed Alvarenga of the rights he would be giving up by pleading guilty, the possibility of deportation, and the maximum penalties for each charge.
¶12. In addressing the criminal complaint, the following exchange occurred:
THE COURT: Mr. Alvarenga, are the facts in the criminal complaint true as it relates to the three charges that you're about to plead to?
[Defense Counsel]: Your Honor, if I may.
THE COURT: Yes.
[Defense Counsel]: We don't completely agree with the facts in the criminal complaint,[2] but what we do agree with is that on August 15th, 1997, ... Mr. Alvarenga did have an altercation with [the victim]; that during the course of that altercation, that Mr. Alvarenga handled a dangerous weapon, which was a knife; that he stabbed [the victim]; that the stabbing caused his death; and that it was done with criminal negligence; that during the course of this altercation through his handling of the knife, that he endangered [the victim's] safety; and through the course of this altercation, that he confined or restrained [the victim] unlawfully and without [the victim's] consent. We do agree to that, we have some differences with the version as related by the witness, [Mr. Alvarenga's former girlfriend].
THE COURT: Is the second[-]degree recklessly endangering safety an act which is distinct from that in count 1?
[Defense Counsel]: I would say that it is because there was  the altercation went on for some time and there are four stab wounds total, one of which is a superficial stab wound to the leg which would be sufficient to endanger safety but to not cause death.
THE COURT: All right. So you've gone over the facts in the criminal complaint and you're satisfied, Mr. Alvarenga, that [the] criminal complaint, even though you have some differences with it, has enough facts in it to show that you negligently handled a dangerous weapon which caused the death of [the victim]. Is that true?
DEFENDANT: Yes.
THE COURT: And that you did so in such a way that you intentionally confined [the victim] without his consent and you didn't have lawful authority to do so. Is that also true, you found sufficient facts in the criminal complaint and I can, too, to substantiate that?
DEFENDANT: Yes.
THE COURT: And also that by virtue of the fact you stabbed him four times and at least one of those stab wounds was not a fatal type wound but might have been based on the conduct you engaged in, that you did recklessly endanger the safety of [the victim] every single time you stabbed him.
DEFENDANT: Yes.
THE COURT: All right. So do both sides agree then that the criminal complaint does contain sufficient facts to form a factual basis for the pleas to all three of these charges?
[Defense Counsel]: Yes.
[Assistant District Attorney]: Yes, as supplemented with [defense counsel's] statements.
[Defense Counsel]: Yes.
(Footnote added.) The trial court went on to accept Alvarenga's pleas because he agreed that he was "truly guilty." Although Alvarenga contends that the trial court "never expressly found the factual basis for the pleas," it does appear that the trial court, at the very least, impliedly found the complaint and the statements of counsel to establish a sufficient factual basis for the guilty pleas. The trial court is entitled to consider both in determining the existence of a factual basis. See Thomas, 232 Wis. 2d 714, ¶18.
¶13. As noted above, there is no requirement that the trial court make the determination that there is a sufficient factual basis in one particular manner. The trial court need only be certain that the defendant understands the elements of the crime, and that the defendant's actions constitute the charged offenses. The trial court took care to ensure that Alvarenga understood each element of each charge.[3] It also made certain to confirm that Alvarenga's conduct satisfied both the negligent handling and reckless endangerment charges by inquiring about the multiple stab wounds. While the court did not list every element of each charge and list the specific facts that matched each element, Alvarenga points to no authority requiring this practice.
¶14. Furthermore, regarding the reckless endangerment charge, Alvarenga admitted that the struggle went on for some time, that he had control of the knife at times, and that there were multiple stab wounds. The circumstances of the struggle adequately support a charge that Alvarenga created, and was aware of, the risk of death or great bodily harm. Even if that was not enough, however, during sentencing, the trial court discussed Alvarenga's statement regarding the military maneuver he employed allowing him to take control of the knife while it was in the victim's possession. Surely that would be sufficient to confirm the factual basis for a reckless endangerment charge.
¶15. The trial court determined that a sufficient factual basis existed for the pleas. We cannot conclude that that determination is contrary to the great weight and clear preponderance of the evidence or that the trial court erroneously exercised its discretion in denying Alvarenga's motion. Alvarenga has failed to establish a manifest injustice entitling him to the withdrawal of his plea.

B. Alvarenga's double jeopardy rights were not violated.
¶16. Alvarenga argues that "the consecutive sentences violate [his] constitutional guarantee against double jeopardy because he was charged with and received three sentences for one criminal act." He appears to contend that he was charged with multiple "counts of the same offense arising out of one criminal act." He also insists that the resolution of this issue requires an analysis of the facts. Alvarenga only pays lip service to the proper analysis, and is ultimately concerned with his argument that the State never specified which actions supported which charges, and that the complaint did not provide enough "detail to distinguish the convictions that is [sic] sought." Interestingly, he concludes that "[b]ecause there was no factual basis to support the different convictions, there was likewise no basis to support the multiple sentences." When the proper analysis is applied, Alvarenga's arguments fail.
¶17. Although the general rule is that a guilty plea waives all non-jurisdictional defenses, including claims of constitutional dimension, double jeopardy is an exception to that rule. State v. Hubbard, 206 Wis. 2d 651, 656, 558 N.W.2d 126 (Ct. App. 1996). "Whether an individual's constitutional right to be free from double jeopardy has been violated is a question of law that this court reviews de novo." State v. Davison, 2003 WI 89, ¶15, 263 Wis. 2d 145, 666 N.W.2d 1. "Whether a multiplicity violation exists in a given case, which requires a determination of legislative intent, is a question of law subject to independent appellate review." Id. The Wisconsin Supreme Court views the relevant provisions of the United States and Wisconsin Constitutions as "identical in scope and purpose[,]" and thus accepts the decisions of the United States Supreme Court as controlling. Id., ¶18. Accordingly, the Wisconsin Supreme Court
read[s] the [United States] Supreme Court as saying that when a defendant is convicted under more than one statute for a single act or transaction and the charges constitute "the same offense" because they are identical in law and fact, the Double Jeopardy Clause prohibits cumulative punishments from these convictions unless the relevant legislative body intended to authorize cumulative punishments.
Id., ¶30 (emphasis omitted). The "same offense" is defined as identical in law and fact. Id., ¶33. Thus, "[a]s a general proposition, different elements of law distinguish one offense from another when different statutes are charged. Different facts distinguish one count from another when the counts are charged under the same statute." Id., ¶41.
¶18. There is a two-step analysis for reviewing multiplicity claims. First, it is necessary to determine whether the offenses are identical in law and fact under the test set forth in Blockburger v. United States, 284 U.S. 299 (1932). Davison, 263 Wis. 2d 145, ¶43. In Blockburger, the Supreme Court stated:
The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not.
284 U.S. at 304. If, under the Blockburger test, the offenses are identical in fact and law, there is a presumption that the legislature did not intend for the same offense to be punished under two different statutes. Davison, 263 Wis. 2d 145, ¶43. If, however, the offenses are not identical in fact and law, there is a presumption that the legislature did intend to allow cumulative punishments. Id., ¶44. Yet, the presumption is rebuttable. Id. Thus, the second step, "even if the charged offenses are not identical in law and fact, [requires the determination of] whether the legislature intended multiple offenses to be brought as a single count." Id., ¶45. However, the defendant has the burden of showing "a clear legislative intent" that the "cumulative punishments" are not intended or authorized. Id. The first step determines whether there is a potential violation of the double jeopardy protection, while the second step determines whether the defendant has a due process claim. Id., ¶46.
¶19. A review of the elements of each charge indicates that they are distinguishable from one another. For false imprisonment, the State must prove that the defendant: (1) intentionally; (2) confined or restrained the victim; (3) without the victim's consent; (4) without the lawful authority to do so; and (5) knew that the confinement or restraint was without the victim's consent and without lawful authority. Wis JI-Criminal 1275. The elements of the homicide by negligent handling of a dangerous weapon charge include: (1) the defendant operated or handled a dangerous weapon; (2) the defendant operated or handled a dangerous weapon in a manner constituting criminal negligence; and (3) such criminal negligence on the part of the defendant caused the death of the victim. Wis JI-Criminal 1175. Criminal negligence is defined as "conduct which the actor should realize creates a substantial and unreasonable risk of death or great bodily harm to another." Id. (citation omitted). And finally, the charge of second-degree recklessly endangering safety requires the State to show that: (1) the defendant endangered the safety of another human being; and (2) by criminally reckless conduct. Wis JI-Criminal 1347. Criminally reckless conduct means "the conduct created a risk of death or great bodily harm to another person; ... the risk of death or great bodily harm was unreasonable and substantial; and ... the defendant was aware that [his] conduct created the unreasonable and substantial risk of death or great bodily harm." Id. (footnote omitted).
¶20. Neither of the latter two charges shares any elements with false imprisonment. They also differ from each other in several respects. The homicide charge requires that the defendant handled a dangerous weapon and that the victim was killed. Neither of those elements is included in the reckless endangerment charge. The reckless endangerment charge, on the other hand, requires the State to prove that the defendant was aware of the risk associated with his conduct; the homicide charge does not require such proof-it only requires criminal negligence.
¶21. While the offenses are clearly not identical in law, it is still necessary to determine whether the legislature intended to allow cumulative punishment. In Davison, the supreme court delineated the four well-known factors to consider in this analysis: "(1) all applicable statutory language; (2) the legislative history and context of the statute; (3) the nature of the proscribed conduct; and (4) the appropriateness of multiple punishment for the conduct." 263 Wis. 2d 145, ¶50. However, as noted above, the defendant has the burden of showing a clear legislative intent that the cumulative punishments were not authorized.
¶22. Alvarenga has not satisfied this burden-he fails to even address the issue of legislative intent. Yet, a common sense reading of the statutes indicates that the legislature intended to allow cumulative punishments for the three different offenses. See State v. Grayson, 172 Wis. 2d 156, 162, 493 N.W.2d 23 (1992) (stating "th[e] court must determine [the legislature's] intent ... according to `a common sense reading of the statute' that will give effect to `the object of the legislature' and produce a result that is `reasonable and fair to offenders and society.'") (citation omitted). Indeed, Wis. Stat. § 939.65 states, in relevant part: "[I]f an act forms the basis for a crime punishable under more than one statutory provision, prosecution may proceed under any or all such provisions." Accordingly, "[t]his section gives a green light to multiple charges, which may result in multiple convictions, under different statutory provisions." Davison, 263 Wis. 2d 145, ¶51. Furthermore, there is nothing in the applicable statutory provisions that gives us any indication that the legislature intended otherwise.

C. The trial court did not erroneously exercise its sentencing discretion.
¶23. Alvarenga contends that the trial court erroneously exercised its sentencing discretion by: (1) basing the sentence on inappropriate considerations when it improperly considered his relationships with other women; (2) failing to "apply the legal standard for imposition of consecutive or maximum sentences"; (3) disregarding "favorable character evidence, his remorse and cooperation" and hypothesizing as to the motive; and (4) disregarding "mitigating facts of record." Regarding the court's consideration of Alvarenga's relationships with other women, he specifically contends:" When the court used [his] relationships with women as a basis to impose sentence, it imposed its own moral judgment and idiosyncrasies on [him]." He also insists that "[c]onsideration of [the] relationships is immaterial and irrelevant to the offense and to permissible sentencing factors[, and] this type of decision presents a violation of [his] constitutional right to freedom of association."
¶24. Sentencing is well within the discretion of the trial court, State v. Larsen, 141 Wis. 2d 412, 426, 415 N.W.2d 535 (Ct. App. 1987), and "[t]he trial court has great latitude in passing sentence[,]" State v. J.E.B., 161 Wis. 2d 655, 662, 469 N.W.2d 192 (Ct. App. 1991). Our review "is limited to determining whether there was an [erroneous exercise] of discretion." Larsen, 141 Wis. 2d at 426 (citation omitted). Further, there is a "strong public policy against interference with the sentencing discretion of the trial court and sentences are afforded the presumption that the trial court acted reasonably." State v. Harris, 119 Wis. 2d 612, 622, 350 N.W.2d 633 (1984). "An [erroneous exercise] of discretion will be found only where the sentence is so excessive and unusual and so disproportionate to the offense committed as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances." Ocanas v. State, 70 Wis. 2d 179, 185, 233 N.W.2d 457 (1975).
¶25. The trial court is to consider three primary factors in passing sentence: (1) the gravity of the offense; (2) the defendant's character; and (3) the need for the protection of the public. Elias v. State, 93 Wis. 2d 278, 284, 286 N.W.2d 559 (1980). The trial court may also consider:
the vicious or aggravated nature of the crime; the past record of criminal offenses; any history of undesirable behavior patterns; the defendant's personality, character and social traits; the results of a presentence investigation; the degree of the defendant's culpability; the defendant's demeanor at trial; the defendant's age, educational background and employment record; the defendant's remorse, repentance and cooperativeness; the defendant's need for rehabilitative control; the right of the public; and the length of pretrial detention.
State v. Borrell, 167 Wis. 2d 749, 773-74, 482 N.W.2d 883 (1992). The weight to be attributed to each factor "is a determination which appears to be particularly within the wide discretion of the sentencing judge." Ocanas, 70 Wis. 2d at 185.
¶26. "The trial court must articulate the basis for the sentence imposed on the facts of the record." State v. Echols, 175 Wis. 2d 653, 682, 499 N.W.2d 631 (1993). Thus, an erroneous exercise of discretion "might be found if the trial court failed to state on the record material factors which influenced its decision, gave too much weight to one factor in the face of other contravening considerations, or relied on irrelevant or immaterial factors." State v. Curbello-Rodriguez, 119 Wis. 2d 414, 434, 351 N.W.2d 758 (Ct. App. 1984). And, regarding consecutive sentences, "a trial judge has discretion to determine whether sentences imposed in cases of multiple convictions are to run concurrently or consecutively, using the same factors that apply in determining the length of a single sentence." Id. at 436.
¶27. The record indicates that the sentencing court considered the presentence investigation report; discussed the discrepancy in the number of stab wounds indicated in the PSI versus the autopsy reports; heard argument from both the State and defense counsel; considered statements from family members of the victim and Alvarenga; reviewed police reports containing Alvarenga's statements; and considered Alvarenga's handwritten letter and oral statements at the sentencing hearing. After acknowledging the nature of the incident-a struggle between two individuals with no witnesses resulting in a death-the court went on to conclude that Alvarenga's version of the crime "that this was just an attack on him and he did nothing but defend him[self] lacks any credibility[.]"
¶28. The trial court addressed all three primary factors. It considered the gravity of the crime indicating that Alvarenga's conduct was "extraordinarily egregious" and that "whatever misconduct or anger or even rage on [the victim]'s part does not come close to excusing Mr. Alvarenga's conduct and that he engaged in conduct that was unnecessarily violent and which caused the death of another human being and he needs to be held to account for that." The court also considered Alvarenga's character and background. It noted that there was some indication that he had been a good father and family member. To the contrary, the court also indicated that, whether due to life circumstances, war, or otherwise, he may not have been particularly responsible in some of the relationships in his life, and that he may have had some negative relationships and made some unproductive choices.[4] It then went on to consider Alvarenga's education and employment history, noting that there had been some responsible employment, and discussed Alvarenga's prior record, both of convictions and arrests. Regarding the community's interest in protection, the trial court indicated that this was Alvarenga's third assault-based offense, and noted that consequently, the circumstances of the case" suggest that a risk of further danger to the community is relatively high." The court also considered Alvarenga's apparent remorse, but concluded that the community's interest in protection was still strong.
¶29. The trial court concluded:
I think, on balance, that it is the crime itself and the result of this crime that must control. I normally lean toward concurrent terms for multiple charges that arise out of the same conduct, but I think in this particular case, given the gravity of the crime and the loss of life that occurred, the consecutive sentences are appropriate. And for the same reasons I believe consecutive maximum sentences are appropriate.
¶30. Thus, a review of the sentencing hearing fails to expose an erroneous exercise of discretion. Alvarenga has failed to persuade us that the trial court did not consider the proper factors; ignored favorable and mitigating factors; appeared to give disproportionate weight to one in the face of other contravening factors; considered any irrelevant or improper factors; or failed to explained its reasoning on the record. Regarding the consecutive sentences, the trial court indicated that due to the circumstances of the case, especially the gravity of the offense, consecutive, maximum sentences were warranted. That was a reasonable explanation.[5] Alvarenga has failed to persuade us that this sentence is "so excessive and unusual and so disproportionate to the offense committed as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances." See Ocanas, 70 Wis. 2d at 185. Indeed, in denying his motion for postconviction relief, the trial court stated:
The defendant received a prison term not to exceed nine years for stabbing a young man to death. A sentence which allows for possible release after less than three years and mandatory release after six years continues to impress me as a sentence which has given the defendant the benefit of every doubt as to the circumstances of this death, and fully considered []his character and background and the community's interest in protection.
We agree. Alvarenga has failed to establish an erroneous exercise of discretion on behalf of the sentencing court. Accordingly, we affirm.
By the Court.  Judgment and order affirmed.
NOTES
[1] All references to the Wisconsin Statutes are to the 1997-98 version unless otherwise noted.

Alvarenga's name is spelled inconsistently throughout the record. For simplicity, we will use the spelling of his name as it appears on the judgment roll.
[2] It appears that Alvarenga maintains that the victim attacked him with the knife-a fact not included in the complaint. There is also some indication in the briefs that Alvarenga's statements to the police indicated that the witness was awake when he arrived, and not awakened by the struggle as indicated in the complaint. Alvarenga's version of the events was not included in the complaint because he did not speak to the police until five years after the complaint was filed.
[3] For example, in regard to the reckless endangerment charge, the trial court explained: "they would have to prove that you endangered the safety of [the victim] by criminally reckless conduct. `Criminally reckless' means that your  that what you did created an unreasonable and substantial risk of death or great bodily harm to another human being and that you were aware of the risk."
[4] Alvarenga contends that these comments were improper and amount to a violation of his right to the freedom of association. We disagree. He makes much more of these comments than is warranted. First of all, in denying his postconviction motion, the trial court explained:

The defendant complains about brief comments made by the court concerning the quality of defendant's past relationships. The court is required to consider defendant's character and background, and negative inferences are not limited, as defendant contends, to matters prohibited by law....
The comments at issue were offered as a balance to the claims on the defendant's behalf that he was a good family member and good father. Without drawing any firm conclusions, I referred to "indications" that the defendant had drifted through life from relationship to relationship, acknowledging that his life circumstances may have contributed to the confusing domestic relationships and long separations from a common law wife, a child, and a second wife. The comments were not improper, and no particular weight was given to these indefinite factors.
(Citation omitted.) This is a reasonable explanation. Furthermore, it does not appear that the trial court was focusing solely on Alvarenga's intimate associations with different women, as Alvarenga seems to contend; indeed, it appears that the trial court was commenting on his overall familial relationships as well. The trial court appears to have been putting Alvarenga's claims in context. Second, the allegedly "improper" statements make up only two sentences of the trial court's sentencing decision, which consists of nine pages of transcript. And finally, in State v. Fuerst, 181 Wis. 2d 903, 512 N.W.2d 243 (Ct. App. 1994), we noted that: "Information about a defendant's religious history, as well as his or her personal and social history is important to considerations of the defendant's character." Id. at 913. This was, however, qualified with the statement that a sentence should not be based upon such religious activities, or presumably such associations. Id. at 913-14. Here, there is hardly an indication that the sentence was based upon these comments.
[5] Alvarenga's reliance on State v. Hall, 2002 WI App 108, 255 Wis. 2d 662, 648 N.W.2d 41, in making his arguments regarding the trial court's alleged failure to explain its reasoning for imposing consecutive sentences and its "departure" from the recommendations of the PSI is misplaced. Hall was an extreme case: the trial court imposed a three hundred and four year sentence with, for all intents and purposes, no analysis of the sentencing factors, and the PSI apparently recommended approximately two hundred years less. Here, there was a reasoned analysis, and no specific sentence recommendation in the PSI, other than incarceration.